J-S68024-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WARREN S. EVANS, | : | |
| | : | |
| Appellant | : | No. 1517 EDA 2014 |

Appeal from the Judgment of Sentence December 19, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0014523-2011

BEFORE: BENDER, P.J.E., DONOHUE and MUNDY, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED DECEMBER 03, 2015**

Appellant, Warren S. Evans ("Evans"), appeals from the judgment of sentence dated December 19, 2013, following his convictions of endangering the welfare of a child ("EWOC"), 18 Pa.C.S.A. § 4304(a), corruption of minors ("COM"), 18 Pa.C.S.A. § 6301(a)(1), and involuntary deviate sexual intercourse ("IDSI") with a child under 13, 18 Pa.C.S.A. § 3123(b). For the reasons that follow, we affirm Evans' convictions, but remand for resentencing on the IDSI conviction.

The Commonwealth's case against Evans depended primarily on the testimony of Courtney Brooks ("Brooks"). In its opinion filed pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, the trial court summarized Brooks' trial testimony as follows:

> When [Brooks] was growing up, she and her
> brothers lived with George Johnson at 5301 Hadfield

Street in Philadelphia. (N.T. 8/28/12 at 11). Though unrelated to [Brooks], Mr. Johnson was her primary caretaker and eventually she called him "grandpop". (*Id.* at 10). One of Mr. Johnson's sons, [Evans], who the victim thought of as an "uncle", also lived from time to time with Mr. Johnson. (*Id.* at 11 -12). When [Brooks] was eight (8) years old, [Evans] started to sexually assault her. (*Id.* at 12 -13).

During one assault, [Brooks] woke up to find [Evans] watching a movie called, "The Players Club ". (*Id.* at 13). As [Brooks] tried to leave, [Evans] told her that she didn't have to leave and the victim sat down on her bed. (*Id.* at 14). After [Brooks] sat down, [Evans] went to a dresser in the room and obtained a coin. (*Id.*). He then turned to [Brooks], flipped the coin in the air, and then proceeded to pull out his penis and tell her, "You got to suck it like a lollipop." (*Id.*). [Brooks] told [Evans] she didn't want to, at which point [Evans] grabbed her head and forced his penis into her mouth. (*Id.* at 15). [Brooks] said that she didn't want to do that and got up from the bed. (*Id.*). [Evans] then ordered [Brooks] to lay down, and once she complied he proceeded to put his mouth on her vagina. (*Id.* at 16). Afterwards [Evans] put his penis between her legs, ejaculated on her legs, and then threw her a towel. (*Id.*). After [Brooks] wiped off [Evans'] semen, she told [Evans] that she was going to tell on him, to which [Evans] replied, "If you tell, you're going to get in trouble and foster care is going to take you away from your brothers." (*Id.* at 16-17). Terrified about this prospect, [Brooks] did not tell Mr. Johnson about the incident. (*Id.* at 16 -17, 95).

Another assault by [Evans] occurred as [Brooks] was watching television in her brothers' room. (*Id.* at 18). The victim's brothers were asleep on the floor, but [Brooks] was awake watching television when [Evans] entered the room and tried to put his penis into her anus. (*Id.* at 19). [Evans] eventually ejaculated on the victim's legs, after which [Brooks] asked [Evans] if she could go to the bathroom. She

> proceeded to the bathroom and wiped off the defendant's semen. (*Id.* at 21). [Brooks] then went downstairs and slept next to Mr. Johnson for the rest of night without telling him what had happened out of fear in getting in trouble. (*Id.* at 22). [Evans] sexually assaulted [Brooks] numerous other times as well, including one instance where he tried to play "doctor" with her. (*Id.* at 23 -24).
>
> After [Brooks] turned eleven (11) years old, she gave a forensic interview at Philadelphia Children's Alliance and informed authorities as to [Evans'] crimes. (*Id.* at 24, 55 -56). Subsequently, [Evans] left Mr. Johnson's home and she did not see him again for four or five years. (*Id.* at 24). When [Brooks] returned to Mr. Johnson's home, she informed the police. (*Id.* at 25 -26).

Trial Court Opinion, 12/22/2014, at 3-4 (footnote omitted).

On August 28-31, 2012, the late Honorable Adam Beloff presided over a jury trial. On August 30, 2012, the jury returned guilty verdicts on the EWOC and COM charges, and on August 31, 2012, the jury also found Evans guilty on the IDSI charge. The jury acquitted Evans on a charge of rape of a child under the age of 13 (18 Pa.C.S.A. § 3121(c)). On December 19, 2013, the Honorable Denis P. Cohen, assigned to the case following the death of Judge Beloff, sentenced Evans to a term of incarceration: (1) of from six and a half to thirteen years on the IDSI conviction, (2) of from one to two years on the EWOC conviction, to run consecutively to the IDSI sentence, and (3) of from one to two years on the COM conviction, to run consecutively to the EWOC sentence. On April 23, 2014, Evans' post-sentence motion was denied by operation of law.

On appeal, Evans raises the following six issues for our review and determination:

1.  The admissible evidence introduced during trial was insufficient as a matter of law to establish [Evans'] guilt beyond a reasonable doubt on the charges of [EWOC] and [COM].

    Additionally, the weight of the evidence introduced during trial failed to establish beyond a reasonable doubt that [Evans] was guilty of IDSI, EWOC and COM. The evidence was so contradictory that a new trial is required.

2.  Prior to sentencing [Evans] was deemed to be a sexually violent predator. The evidence introduced during the hearing was insufficient to establish that [Evans] should be classified as a SVP.

3.  The trial court erred when sentencing [Evans] with regard to his right to allocate.

4.  The trial court erred in failing to grant time credit to [Evans] for time he had spent on house arrest prior to his sentencing.

5.  The [COM] charge merges with IDSI for sentencing purposes.

6.  The trial court's request that it be allowed to sua sponte raise a sentencing issue and thereby have the matter remanded for resentencing on the IDSI charge must be denied.

Evans' Brief at 10.

We will address Evans' last issue first, as it requires consideration of the precise nature of his conviction of IDSI, which in turn affects our consideration of the remaining issues. For his sixth issue on appeal, Evans

refers us to a footnote in the trial court's Rule 1925(a) opinion, in which Judge Cohen requests that we remand this case for resentencing because he mistakenly sentenced Evans for the crime of IDSI by forcible compulsion, 18 Pa.C.S.A. § 3123(a)(1), rather than IDSI upon a child who is less than 13 years of age, 18 Pa.C.S.A. § 3123(b). Trial Court Opinion, 12/22/2014, at 2 n.4.

Evans opposes a remand, claiming that he was in fact convicted of IDSI by forcible compulsion. Evans' Brief at 45. Evans points out that the Commonwealth's original bills of information stated that he was charged with a violation of section 3123(a)(1), and that at no time thereafter (either before or during trial) did the trial court or the Commonwealth specify that the actual charge being pursued was a violation of section 3123(b). *Id.* The Commonwealth responds that while the bills of information identified a violation of section 3123(a)(1), Evans was therein also provided notice of the Commonwealth's intention to "proceed under 18 [Pa.C.S.] §§ **3123(b)**, (c) & (d)" which relate to "involuntary deviate sexual intercourse with a child less than 13 years of age." Commonwealth's Brief at 36 (emphasis added).

Unfortunately, we are not in a position to review the bills of information. Although the docket reflects that the Commonwealth filed an information on January 6, 2012, this document is not contained in the certified record on appeal. The case docket does reflect that the information charged Evans with "IDSI Forcible Compulsion," a first-degree felony under

"18 § 3123 §§ A1." The docket also reflects that after a preliminary hearing in the Magistrate Court on December 23, 2011,[1] Evans was "Held for Court" on the "IDSI Forcible Compulsion" charge. The Commonwealth's initial criminal complaint, filed in the Magistrate Court on or around August 8, 2011, provided only that Evans was charged with, inter alia, IDSI under section 3123, without further specificity, although it (along with the accompanying Affidavit of Probable Cause) did make clear that the victim was between 8 and 11 years old at the time of the offenses. Complaint, 8/8/2011, at 2; Affidavit of Probable Cause, 8/8/2011, at 2.

These vagaries aside, there is no question that **at trial** Evans was convicted of the crime of IDSI of a child under 13. On the first day of trial on August 28, 2012, Evans was arraigned on, and entered a plea of not guilty to, IDSI of a child under 13 on that charge.

> [COURT CRIER]: To the same docket number, charging you with involuntary deviate sexual intercourse of a child under 13, how do you plead?
>
> [THE DEFENDANT]: Not guilty.

N.T., 8/28/2012, at 6-7. Evans was not similarly arraigned on IDSI by forcible compulsion. At the close of the evidence, the trial court instructed the jury on IDSI of a child under 13:

> [THE COURT]: The defendant is also charged with involuntary deviate sexual intercourse. A person

---

[1] The case was transferred to the trial court on or about December 27, 2011.

- 6 -

> commits involuntary deviate sexual intercourse with a child when the person engages in deviate sexual intercourse with a child who is less than 13 years of age.

N.T., 8/28/2012, at 74-75. Again, the trial court did not instruct the jury on IDSI by forcible compulsion. Finally, the jury sheets for August 30 and 31, 2012, list "INVOLUNTARY DEVIATE SEXUAL INTERCOURSE of a CHILD UNDER 13," and the August 31, 2012 sheet reflects a verdict of guilty on this crime. Verdict Report, 8/31/2012, at 1. The jury sheets do not reference IDSI by forcible compulsion. Evans' counsel did not assert any objection to the nature of the IDSI charge being pursued at trial by the Commonwealth.

Accordingly, the certified record plainly demonstrates that the jury convicted Evans of IDSI of a child who is less than 13 years of age, 18 Pa.C.S.A. § 3123(b). Any earlier references to section 3123(a)(1) in the bills of information are of no current moment, since Evans has not raised, either in the trial court or now on appeal, any issues relating to lack of notice of the charges against him. Variance between an information and the proof at trial is not fatal as long as the defendant had adequate notice of the nature of the crime and it did not cause any prejudicial surprise. *Commonwealth v. Lohr*, 468 A.2d 1375 (Pa. 1983); *Commonwealth v. Murgallis*, 753 A.2d 870, 872 (Pa. Super. 2000); *Commonwealth v. Johnson*, 719 A.2d 778, 783, n. 4 (Pa. Super. 1998). Evans has not asserted any lack of adequate notice of the charges against him or any

- 7 -

prejudicial surprise relating to his arraignment, trial, or conviction on the charge of IDSI of a child under 13 years of age.

Instead, the only issue presently before us is one of sentencing. As a result of Judge Beloff's untimely death, Evans was sentenced by Judge Cohen. As the transcript of the sentencing hearing and the sentencing order both reflect, Judge Cohen mistakenly sentenced Evans for IDSI by forcible compulsion rather than IDSI of a child under 13. N.T., 12/19/2013, at 3; Order of Sentence, 12/19/2013, at 1. We would generally not expect that sentences for these two IDSI crimes to be substantially different, as both are first-degree felonies, both had the same offense gravity score (12) under the applicable sentencing guidelines, and the trial court expressly took into consideration the victim's tender age when imposing sentence. N.T., 12/19/2013, at 20-21. Nevertheless, as a technical matter, the trial court sentenced Evans for a crime for which he was not convicted, which was an illegal sentence because it lacked statutory authority. *See, e.g.*, *Commonwealth v. Bradley*, 834 A.2d 1127, 1131 (Pa. 2003). This Court may raise illegality of sentence sua sponte,[2] and upon remand the trial court

---

[2] When sentencing Evans, the trial court indicated that IDSI crimes against children carry a mandatory minimum sentence of from five to ten years of imprisonment. 42 Pa.C.S.A. § 9718. This Court has ruled that mandatory minimum sentencing pursuant to section 9718 is facially unconstitutional, per the decision of the United States Supreme Court in *Alleyne v. United States*, 133 S.Ct. 2151 (2013). *Commonwealth v. Wolfe*, 106 A.3d 800, 801 (Pa. Super. 2014), *appeal granted*, 121 A.3d 433 (Pa. 2015). In the present case, however, Judge Cohen, citing to standard guideline ranges,

will have jurisdiction to resentence Evans to correct a "patent and obvious mistake," i.e., an order inconsistent with what in fact occurred in the proceedings below. *See, e.g.*, *Commonwealth v. Borrin*, 80 A.3d 1219, 1228 (Pa. 2013); *Commonwealth v. Holmes*, 933 A.2d 57, 59-60 (Pa. 2007); *Commonwealth v. Young*, 695 A.2d 414, 416-18 (Pa. Super. 1997).

For his first issue on appeal, Evans challenges the sufficiency of the evidence to support the convictions for EWOC and COM, and that the weight of the evidence did not support any of his convictions. We begin with his challenges to the sufficiency of the evidence, which we review based upon the following standard:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005).

---

sentenced Evans on the IDSI conviction to a term of incarceration in excess of the mandatory minimum (six and one half to thirteen years). Where a sentencing court exceeds a mandatory minimum by applying a standard guideline range, it has not sentenced in accordance with the applicable mandatory minimum statute and thus the sentence is not illegal on this ground. *Commonwealth v. Shoemaker*, 2015 WL 6675130, at *7 (Pa. Super. Aug. 19, 2015) (quoting *Commonwealth v. Ziegler*, 112 A.3d 656, 662 (Pa. Super. 2014)). As a result, we do not remand on this basis.

> Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." ***Id.***; ***see also Commonwealth v. Aguado***, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. ***See Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa. Super. 2001).

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. ***See Brewer***, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." ***Id.*** (quoting ***Commonwealth v. Murphy***, 795 A.2d 1025, 1038–39 (Pa. Super. 2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. ***See Brewer***, 876 A.2d at 1032.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013) (quoting ***Commonwealth v. Pettyjohn***, 64 A.3d 1072, 2013 49 (Pa. Super. 2013)).

The crime of EWOC is defined by statute, in relevant part, as follows: "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the

welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304.[3] This Court has established a three-element test for EWOC: (1) the accused was aware of his/her duty to protect the child; (2) the accused was aware that the child was in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare. ***Commonwealth v. Pahel***, 456 159, 689 A.2d 963, 964 (Pa. Super 1997) (quoting ***Commonwealth v. Cardwell***, 515 A.2d 311, 315 (Pa. Super. 1986)).

On appeal, Evans contests the sufficiency of the evidence on the first element, contending that the Commonwealth failed to prove that he was a "caretaker" for Brooks. Evans' Brief at 13-22. Evans directs our attention to testimony from Brooks in which she indicated that she considered Evans to be akin to an "uncle," but not her caretaker. N.T., 8/28/2012, at 49-51 ("I knew he wasn't my caretaker."). Evans further contends that he had no legal obligation to care for Brooks, and that instead his father (George Johnson, Sr.) was Brooks' caregiver.[4] Evans' Brief at 13.

---

[3] This is the version of section 4304 in effect at the time of Evans' offenses.

[4] Evans' appellate brief includes a detailed description of various events and circumstances relating to the Johnson household, including that at the time of Brooks' birth, her mother was having an extramarital affair with George Johnson, Sr., that Brooks' mother abandoned her children (including Brooks and her brothers) at Johnson, Sr.'s home after the money from a civil suit ran out, and that there was considerable animosity between Johnson, Sr.'s

- 11 -

Contrary to Evans' assertions, the crime of EWOC does not require either that the defendant be the child's "caretaker" or have any legal responsibility as a parent or guardian. Instead, as the statutory language makes clear, any person who supervises a child is potentially criminally liable. In interpreting the statutory language, this Court has acknowledged that the legislature attempted "to prohibit a broad range of conduct in order to safeguard the welfare and security of our children." ***Commonwealth v. Brown***, 721 A.2d 1105, 1106 (Pa. Super. 1998). In ***Brown***, we explained:

> In the present case, we must focus on the meaning of the term "other person supervising the welfare of a child" as an element of the crime in light of the common sense of the community. In an age when nontraditional living arrangements are commonplace, it is hard to imagine that the common sense of the community would serve to eliminate adult persons residing with a non-custodial child from the scope of a statute protecting the physical and moral welfare of children. 18 Pa.C.S.A. § 4304 Official Comment, 1972. Accepting appellant's argument would be to accept the idea that this statute is limited to only

children (including Evans) and Brooks and her brothers. Evans' Brief at 13-14. Evans' also claims that a Department of Human Services' investigation concluded that he was not a caretaker for Brooks. ***Id.*** at 15.

No evidence in support of these points was introduced at trial, however, and was not otherwise included in the certified record on appeal. Accordingly, we will decide the issues presented on appeal without any consideration of this information. ***See, e.g.***, ***Commonwealth v. Lawson***, 2015 WL 6114513, at *4 (Pa. Super. July 30, 2015) (Pennsylvania appellate courts cannot consider anything that is not included in the certified record on appeal); ***In re Estate of Tigue***, 926 A.2d 453, 459 (Pa. Super. 2007) ("This Court does not rely on facts dehors the certified record."); ***Commonwealth v. Montalvo***, 641 A.2d 1176, 1183 (Pa. Super. 1994) ("For purposes of appellate review, what is not of record does not exist.").

those persons with permanent, temporary, or other quasi-legal custody of children. The common sense interpretation of the language of the statute and this Court's recent case law do not support such a narrow reading.

Deciding that adults who share a residence with a child not in their legal custody are not responsible for the welfare of that child would undermine both the language and application of the endangering statute. Under such a limited reading, stepparents, grandparents, adult siblings, adult roommates, life partners, and others could not be prosecuted for endangering the welfare of a child. Our courts should not and have not limited the scope of the statute to exclude this broad and diverse category of persons.

**Brown**, 721 A.2d at 1107.

More recently, in **Commonwealth v. Bryant**, 57 A.3d 191 (Pa. Super. 2012), we rejected out of hand the appellant's contention that he could not be criminally responsible for EWOC because he was not a relative or a permanent resident of the victim's home and thus was "not in the role of caretaker and had no duty to protect the child." **Id.** at 197. Similarly, in **Commonwealth v. Trippett**, 932 A.2d 188 (Pa. Super. 2007), we affirmed the appellant's conviction for EWOC even though "he was not the parent or natural guardian" of the victim and was not living in the same house. **Id.** at 195. We recognized that "[t]he plain language of the statute does not indicate a person need only be a parent or guardian of a child before they can be charged and convicted under section 4304," and that "any 'other

person' who supervises the child is eligible to be charged and convicted under the statute." *Id.*

In the present case, the Commonwealth introduced sufficient evidence that Evans supervised Brooks for purposes of section 4304. During cross-examination by the Commonwealth, Evans' brother, Michael Johnson, testified as follows:

    Q.    [Evans] would help your dad take care of the kids; is that right?

    A.    Yes.

    Q.    Sometimes if your dad wasn't there, [Evans] would take care of things for him, including the children, right?

    A.    Yes.

N.T., 12/29/2012, at 55. Similarly, Evans' brother George Johnson, Jr. testified that:

    Q.    Sometimes [Evans] would help your dad take care of [Brooks] and her brothers; is that right?

    A.    Yes.

*Id.* at 60.

Finally, we note that Brooks' testimony about her view of Evans as an uncle rather than a caretaker was offered on cross-examination in relation to her concern that Evans might have her removed from the house and separated from her brothers if she told anyone about the molestation. N.T., 12/28/2012, at 49-51. Read in the light most favorable to the

Commonwealth, as our standard of review requires, Brooks was arguably relating only her fear that Evans possessed sufficient authority to make good on his threats, even though he technically was more like an uncle than her primary caretaker. As such, her testimony need not be understood as a denial that Evans ever provided supervision over her and her brothers.

The crime of COM requires proof that a person age 18 years and above, "by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime …." 18 Pa.C.S.A. § 6301(a)(1). Evans argues that the Commonwealth's evidence was insufficient to support his conviction on this charge because he did not encourage Brooks to commit a criminal act, and because there was no evidence that Brooks was in fact "corrupted or tended to be corrupted" by the sexual acts at issue. Evans' Brief at 22.

There is no requirement of any underlying criminal activity as a basis for COM conviction, as the statute states "by any act," not "by any criminal act." **Commonwealth v. Decker**, 698 A.2d 99, 100 (Pa. Super. 1997), *appeal denied*, 705 A.2d 1304 (Pa. 1998). "Corruption of a minor can involve conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature[, and they] cover a broad range of conduct." **Id.** at 101 (quoting **Commonwealth v. Todd**, 502 A.2d 631, 635 n. 2 (Pa. Super. 1985)). As such, the Commonwealth

does not have to prove that the appellant's actions actually corrupted the morals of the victim, but rather only provide evidence that the appellant's actions "tend to have the effect of corrupting the morals of a minor." **Commonwealth v. Slocum**, 86 A.3d 272, 277 (Pa. Super. 2014). This Court has held that the types of acts constituting "corruption" are those that "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." **Decker**, 698 A.2d at 100.

Presently, the Commonwealth's evidence showed that Evans engaged in inappropriate sexual contact with Brooks on multiple occasions.[5] Brooks testified that the molestation caused "her whole life to change," including anger issues that resulted in her expulsion from school. N.T., 8/28/2012, at 25. She also indicated that Evans' actions caused her to "hate all men for a very long time." **Id.** Accordingly, we have no basis to question the trial court's determination that Evans' "heinous acts … against a young girl are more than sufficient, when taken in the light most favorable to the verdict

---

[5] Evans also cites to **Commonwealth v. Karkaria**, 612 A.2d 1167 (Pa. 1993) and related cases to argue that the evidence here was so contradictory that the defendant's conviction for forcible rape could not be sustained. Evan's Brief at 27-28. In **Karkaria**, however, our Supreme Court concluded that the evidence, even when read in the light most favorable to the Commonwealth, was so unreliable and contradictory that it did not prove that "a single act of intercourse occurred" during the time frame in question. **Id.** at 1171-72. In significant comparison, based upon our careful review, we conclude that the Commonwealth's evidence in this case, including Brooks' testimony, suffers from no similar irreconcilable defects.

winner, to prove [him] guilty of [COM]." Trial Court Opinion, 12/22/2014, at

7.

Evans also challenges the trial court's determination that his convictions were not against the weight of the evidence. Our standard of review applicable to a challenge to the weight of the evidence is as follows.

> [A] verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. It is well established that a weight of the evidence claim is addressed to the discretion of the trial court.... The role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.
>
> Significantly, in a challenge to the weight of the evidence, the function of an appellate court ... is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider de novo the underlying question of the weight of the evidence. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. It is for this reason that the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009) (internal citations and quotation marks omitted).

Evans' weight of the evidence claim depends primarily on his challenge to the credibility of Brooks' testimony. In his appellate brief, Evans describes Brooks as a "fantasy laden young woman" and attempts to identify inconsistencies and shortcomings in the substance of her testimony. Evans' Brief at 13-30. It is not this Court's function, however, to pass on the credibility of trial witnesses. Rather, it was the jury's function to evaluate Brooks' credibility, and to this end it was free to believe all, part, or none of the evidence. *Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011). In this case, Evans had a full and fair opportunity to cross-examine Brooks and to raise for the jury's consideration all of his reasons for doubting her credibility. Through its guilty verdicts, the jury plainly found Brooks' testimony to be credible, disagreeing with Evans' contentions to the contrary. Based upon our review of the certified record on appeal, the trial court did not abuse its discretion when determining that the jury's verdict is not so contrary to the evidence that it shocks one's sense of justice. As such, we find no palpable abuse of discretion that would necessitate a new trial.

For his second issue on appeal, Evans challenges the sufficiency of the evidence supporting the trial court's ruling that he should be classified as a sexually violent offender (SVP).

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.
>
> The standard of proof governing the determination of SVP status, i.e., "clear and convincing evidence," has been described as an "intermediate" test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt.
>
> * * *
>
> The clear and convincing standard requires evidence that is "so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue."

*Commonwealth v. Fuentes*, 991 A.2d 935, 942 (Pa. Super.) (en banc),

*appeal denied*, 12 A.3d 370 (Pa. 2010).

At the time of Evans' conviction, he was subject to the assessment provisions of the former Megan's Law, which stated, in relevant part:

> After conviction but before sentencing, a court shall order an individual convicted of an offense specified in section 9795.1 (relating to registration) to be assessed by the board. The order for an assessment shall be sent to the administrative officer of the board within ten days of the date of conviction. 42 Pa.C.S. § 9795.4(a). After the court entered such an order, a member of the Sexual Offenders'

Assessment Board ("SOAB") was assigned to conduct an assessment to determine if the individual should be classified as a sexually violent predator. 42 Pa.C.S. § 9795.4(b).15 The Act defined a "sexually violent predator" as:

A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses ....

42 Pa.C.S. § 9792. Furthermore,

"predatory" conduct, which is indispensable to the designation, is defined as an "act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." ***Meals***, 590 Pa. at 120, 912 A.2d at 218–19 (quoting 42 Pa.C.S.A. § 9792).

***Fuentes***, 991 A.2d at 943. Section 9795.4 also provides in relevant part:

An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b) (repealed).

In this case, Evans' assessment was conducted by Dr. Barry Zakireh, Ph.D., a licensed psychologist and a member of the SOAB. Evans' trial

counsel stipulated to the admission of Dr. Zakireh's report and neither challenged its findings nor introduced any contrary evidence. N.T., 12/19/2013, at 6. In reviewing Dr. Zakireh's report, the trial court concluded as follows:

> In his report, Dr. Zakireh stated that the defendant met the necessary criteria for Pedophilia, and that, "[i]ndividuals with Pedophilia tend to experience recurrent or intense fantasies, urges and behaviors involving sexual activity with prepubescent children." (SVP Report, p. 9). In explaining his determination, the doctor stated:
>
>> "There is significant evidence of a repetitive pattern of offending against a prepubescent victim which is associated with a pedophilic urges and interests. Although the sexual contacts with the victim may have possibly extended into hear early pubescence, this pattern remains consistent with many individuals manifesting pedophilic characteristics as they do not necessarily assault prepubescent children exclusively or limit their sexual behaviors to a specific group of minors. Hence, the offender's behavior in this case indicates significant and prolonged pedophilic interests, arousal, or sexual interest/urges toward a prepubescent or young minor and significantly exceeds the required duration of a six-month period for the presence of sexual urges, fantasies or behaviors involving a prepubescent child as required by the criteria for Pedophilia."
>
> (SVP Report, p.9-10)

- 22 -

With regard to the [Evans'] predatory conduct, the doctor found that the defendant's conduct was predatory:

"From the statutory viewpoint, it is imperative to establish that the defined mental abnormality can lead to or increase the likelihood of predatory behavior. The mental abnormality in this case involves repetitive and/or prolonged acting out of deviant sexual interests, proclivities, or urges toward prepubescent or minor children. In this evaluator's opinion the statutory criteria is met along this dimension ... it is evident that [Evans] extended, augmented, transformed, or promoted his relationship as family based, long-term acquaintance in a supervisory or care- taking role with the victim at least in part (if not primarily) for the purpose of sexual gratification, victimization, and stemming from deficits in controlling sexual impulses toward prepubescent children or young minors. As well, the presence of multiple sexual contacts over a period of several years with the victim clearly indicates an evolving relationship initiated, developed or maintained by the offender toward the victim at least partially if not predominantly for sexual purposes. Furthermore, his behavior was intentional, deliberate, anteceded by sexual thoughts or fantasies, and involved planning and/or risk- taking in order to gratify his sexual impulses ... given these aspects, it is the opinion of this examiner that [Evans'] behavior during the Instant Offense represents and corresponds to the legal conception of "predatory" as defined in the Pennsylvania Statutes.

(SVP Report, p. 10 -11).

> This Court, after reviewing the report, determined that there was clear and convincing evidence that [Evans] was a SVP. The impetus behind the commission of the crime was clearly sexual in nature, and this Court firmly believed that based on Dr. Zakireh's report, [Evans] was likely to reoffend.

Trial Court Opinion, 12/22/2014, at 9-10. Based upon our review, the record supports the trial court's findings. Dr. Zakireh's report indicated that Evans has the mental abnormality of pedophilia, which our Supreme Court has held to be sufficient to sustain a criminal defendant as a SVP. *Commonwealth v. Meals*, 912 A.2d 213, 223 (Pa. 2006).

On appeal, Evans argues that Dr. Zakireh failed to give sufficient consideration to certain factors, including that Evans had only one victim (Brooks) and that he made no sexual advances towards her when she returned to the home after being away for several years. Evan's Brief at 31. In support of his arguments, Evans cites to *Commonwealth v. Krouse*, 799 A.2d 835 (Pa. Super. 2002) (en banc). In *Meals*, however, the Supreme Court disapproved of our decision in *Krouse*, holding that the section 9795.4(b) factors do not "operate as a checklist where each factor weights, in some absolute fashion, either for or against a SVP classification." *Meals*, 912 A.2d at 222. It was for Dr. Zakireh, and not for this Court, to weigh the statutory factors to arrive at a diagnosis and determination of SVP status.

A review of Dr. Zakireh's report reflects that he reviewed all of the listed statutory factors, including those Evans' contends are absent in his case. For example, while Dr. Zakireh considered the lack of multiple victims, he decided that other factors were more important -- including the disparity in age (45 years), Evans' position of authority, the length of time over which the molestation occurred (three years), and his increasing oblivion to detection (molesting her while her brothers were sleeping in the same room). *See generally Commonwealth v. Stephens*, 74 A.3d 1034, 1040 (Pa. Super. 2013) (SVP classification affirmed where a single victim was molested over an extended period of time). In addition, although Evans made no sexual advances on Brooks when she returned to the home several years later, she was no longer prepubescent by this point in time, and thus his behavior was not inconsistent with a diagnosis of pedophilia.

For his third issue on appeal, Evans contends that the trial court failed to extend to him his right to allocute prior to sentencing. There is no question that the trial court provided Evans with an opportunity to speak prior to sentencing, as is clear from these transcript excerpts cited in Evans' appellate brief:

> [THE COURT]: And, sir, will you stand up? Mr. Evans, before I hear from the Commonwealth, I want to give you allocution rights which means anything you might want to tell the Court before the Court hears from Ms. McNabb, the assistant DA, and imposes sentence, the Court would be happy to hear from you

[THE DEFENDANT]:  Can I speak?

[THE COURT]:  Yes, you can speak.  Whatever you'd like to tell me, I'd be happy to hear from you

[THE DEFENDANT]:  The only thing I would like to say is that I hired Mr. Sagot to represent me because when I had Randolph Goldman represent me, he didn't do any investigation in my case and the case is so conflicting, its pathetic.

[THE COURT]:  You're not making argument on the effectiveness of counsel?  Why don't you just address the sentencing, because it's this Court's decision as to what the sentence should be.  So your attorney has asked that I simply impose the mandatory minimum, and, as you understand, I'm sure Mr. Sagot explained to you the Court has to impose that.

[THE DEFENDANT]: Yes.

* * *

[THE COURT]:  I'm going to hear from you.  I'm going to hear from Ms. McNabb.  I was not at the trial.  I've got all the notes of testimony right here that I reviewed.  Whatever you'd like to tell me, I will be very happy to hear from you, sir.  A lot is on the line.

This is your case.

[THE DEFENDANT]:  I understand.  Like I was saying, and in the case, there's five different stories.  That's all I have to say.

[THE COURT]:  There were five different stories?

[THE DEFENDANT]:  Yes. It was never investigated, yes.

[THE COURT]:  Here's my question to you, just so you understand, I want you to understand as much as possible.  My job is to impose a sentence. So part of the sentence relates to what the impact of the sentence would be.  So I'm not here to try the case all over again.  Your statement about five different stories really relates to the trial.  The jury returned the verdict, so the verdict is what it is I now have to impose a sentence on that.  Is there anything you might want to tell me about yourself that will be helpful for me to decide what the sentence would be?  Mr. Sagot addressed it, he talked about your age and all that, but anything, this is your opportunity.  Mr. Sagot is not telling you not to say stuff, so he's letting you say whatever you want to bring to my attention.  Am I correct, Mr. Sagot?

*      *      *

[MR. SAGOT]:  That's correct.

[THE COURT]:  So you're not going to retry the trial right now  The notes of testimony are in my hands.  We're not going to retry the trial, because that's not my function.  My function right now is to impose sentence.  So whatever you might want to tell me that might be relevant to what the sentence is, I would be very happy to hear from you.

[THE DEFENDANT]: I would like to go back to work. I miss working.  I miss my family. I miss my kids. That's it

[THE COURT]:  Thank you very much.

N.T. 12/19/13 at 9 -13.

On appeal, Evans argues that while the trial court provided him with an initial opportunity to speak, "in actuality" the trial court refused "to consider [his] allocutorial statements."  Evan's Brief at 36.  Evans further claims that the trial court attempted to "dissuade [him] from allocuting

further about the fact[s] of the case, a thing he really needed to do since the prosecution would use those same facts to ask for a severe sentence." *Id.*

To preserve an appellate claim for lack of the right to allocution, the appellant must raise the claim before the trial court. Pa.R.A.P. 302(a); *Commonwealth v. Hardy*, 2014 187, 99 A.3d 577, 579 (Pa. Super. 2014) (to preserve a claim of error pertaining to the right of allocution, the defendant must raise the claim before the trial court at the time of sentencing or in a post-sentence motion) (citing *Commonwealth v. Jacobs*, 900 A.2d 368, 372 (Pa. Super. 2006) (en banc)). In this case, Evans did not assert any objections relating to his right of allocution, either at the sentencing hearing on in a post-sentence motion, and therefore it is waived for purposes of this direct appeal. Citing to *Arizona v. Fulminate*, 499 U.S. 279 (1991), Evans contends that interference with allocution rights constitutes a non-waivable "structural error." Evans' Brief at 27-28. In our en banc decision in *Jacobs*, however, this Court considered this argument at some length and concluded that the right of allocution does not implicate the legality of sentence and thus is waivable. *Jacobs*, 900 A.2d at 372-77.

For his fourth issue on appeal, Evans posits that the trial court erred in refusing to grant him credit for time served while on house arrest prior to his sentencing.[6] This issue is easily resolved. In *Commonwealth v. Kyle*, 874

---

[6] Evans did not raise either this issue or the next one (sentencing merger) in the trial court. We agree with Evans, however, that both issues relate to

A.2d 12 (Pa. 2005), our Supreme Court ruled that an individual is not entitled to sentencing credit for time spent at home and subject to electronic monitoring. *Id.* at 17-22. "Incarceration in an institutional setting is different in kind, not in mere degree, from 'confinement' to the comforts of one's home." *Id.* at 22.

Evans cites to various decisions from this Court in support of a contrary result, including *Commonwealth v. Vanskiver*, 819 A.2d 69 (Pa. Super. 2003), *Commonwealth v. Mallon*, 406 A.2d 569 (Pa. Super. 1979), and *Commonwealth v. Usher*, 399 A.2d 1129 (Pa. Super. 1979). To the extent that these cases support Evans' claim for sentencing credit, they have been overruled by *Kyle*. Evans also argues that *Kyle* was wrongly decided, insisting that the basis for the decision is not sound, as it "constantly harkens back to the notion that serving a sentence in the 'comfort' of one's home is repugnant to the idea of jail." Evans' Brief at 41-42. This Court, however, has no authority to reconsider or ignore decisions of our Supreme Court, as we must in all instances follow its mandates. *Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 480 (Pa. 2011).

---

the legality of his sentence and thus are non-waivable. *Jacobs*, 900 A.2d at 372. We further note that because both issues raise questions of law, our standard of review is plenary. *See, e.g.*, *Commonwealth v. Duffy*, 832 A.2d 1132, 1137 (Pa. Super. 2003), *appeal denied*, 845 A.2d 816 (Pa. 2004).

For his fifth issue on appeal, Evans argues that the crimes of EWOC and COM should each have merged with IDSI for sentencing purposes, and as a result the sentencing court erred in imposing separate sentences for these crimes. "[T]he same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses." ***Commonwealth v. Anderson***, 650 A.2d 20, 22 (Pa. 1994). Whether particular crimes merge for sentencing purposes depends in the first instance upon 42 Pa.C.S.A. § 9765, which provides as follows:

> **§ 9765.** Merger of sentences
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

In the present case, neither of the two requirements for merger exists. First, the charges against Evans did not arise from a single criminal act. While Brooks was able to relate the details of just two specific episodes of molestation, she testified that Evans' sexual improprieties occurred on multiple occasions between the time she was 8 until she was 11. N.T., 8/28/2012, at 12-24. On appeal, Evans contends that merger is nevertheless required because the Commonwealth only charged him with

- 30 -

single counts for IDSI, EWOC and COM. This Court rejected such an argument in **Commonwealth v. Snyder**, 870 A.2d 336 (Pa. Super. 2005). All that is required is that the jury, based upon the testimony received, could reasonably have concluded that multiple separate criminal acts took place. **Id.** at 349-51. Here, based upon Brooks' testimony, such a finding was well within the jury's province.

Second, the three crimes at issue here all necessitate proof of at least one element that the others do not. 42 Pa.C.S.A. § 9765; **Commonwealth v. Thomas**, 879 A.2d 246, 263 (Pa. Super. 2005). Evans' conviction of IDSI required proof that he engaged in involuntary deviate sexual intercourse with a child under the age of 13, while EWOC did not. Conversely, EWOC required proof that he was providing care or supervision to a child under the age of 18, and IDSI did not. Likewise, Evan's conviction for COM required proof that his actions tended to corrupt the morals of a child under the age of 18, while his IDSI conviction did not, whereas IDSI required proof of an act of involuntary deviate sexual intercourse with a child under the age of 13, which is not an element of COM. As a result, neither EWOC nor COM is a lesser-included offense to IDSI, and pursuant to section 9765 none merge for sentencing purposes.

For these reasons, we affirm Evans' convictions on all charges, but remand to the trial court for resentencing on the IDSI conviction. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2015