J. A25040/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC R. WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 3495 EDA 2014 |

Appeal from the Judgment of Sentence November 25, 2014
In the Court of Common Pleas of Delaware County
Criminal Division No(s).: CP-23-CR-0001773-2014

BEFORE: DONOHUE, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED DECEMBER 22, 2015**

Appellant appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas.  Following a non-jury trial, Appellant was found guilty of possession of firearms prohibited[1] and firearms not to be carried without a license.[2]  Appellant contends the trial court erred in denying his motion to suppress the physical evidence seized as a result of his illegal detention.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1).

[2] 18 Pa.C.S. § 6106(a)(1).

J.A25040/15

We adopt the facts as set forth by the trial court's opinion.[3] **See** Trial Ct. Op., 10/15/14, at 1-5.[4] At the suppression hearing, Trooper Colon testified as follows regarding Appellant's criminal history:

> [The Commonwealth]: . . . So, Trooper, you're back in the car. You're reviewing [Appellant's] criminal history?
>
> A: Yes, sir.
>
> Q: Is that standard practice?
>
> A: Yes.
>
> *   *   *
>
> Q: Possession with Intent in '95, . . . Resisting in '96, is that right, Robbery RSP, acquitted in Robbery in '98?
>
> A: Yes, sir.
>
> Q: Acquitted in '01?
>
> A: Yes.
>
> Q: Acquitted in '02?
>
> A: Correct.
>
> Q: Gun charge, '03?
>
> A: Yes.

---

[3] Appellant does not contest the legality of the motor vehicle stop. **See** Appellant's Brief at 5.

[4] We note that there is no reference to the notes of testimony in the trial court's recitation of certain findings of fact. Our review of the record indicates that the court had the benefit of a video of the traffic stop. N.T., 7/25/14, at 7. The court viewed the video, which was not part of the certified record. **See id.** at 21, 24, 25, 33, 63.

Q: Two acquits in '04?

A: Yes.

Q: Gun charge in '05?

A: Yes.

Q: Tampering with Evidence and Possession with Intent to Distribute in 2010?

A: Yes.

Q: Driving while suspended, 2012?

A: Yes.

Q: And a possessing (inaudible) charge?

A: Yes, sir. Those are all the things that were revealed.

* * *

Q: . . . [D]id you check [Appellant's] licensing status?

A: Yes, and it was found to be suspended.

Q: So he's a suspended driver at this point with an unregistered vehicle?

A: That is correct.

* * *

Q: . . . You asked [Appellant] if he'd ever been arrested before, right?

A: Yes, sir, I did.

A: And how did he respond?

A: He contradicted what was revealed to me on the earlier query of his RAP sheet by relating that he had only

been—his most recent arrest was in 2008, which as we saw earlier was not true. . . . Furthermore, he related that arrest specifically in 2008 was for a domestic charge, to—which again contradicted what was revealed in that query.

Q: And he gave you a story about being shot five times?

A: Yes, for . . .

Q: As part of that domestic situation?

A: Yes.

Q: Did you ask him about that or did he just offer that information?

A: He had just offered that information stating that he was a victim, yet he was arrested in '08, which I didn't understand.

N.T. at 25-28, 40.

Appellant filed an omnibus pre-trial motion to suppress the firearms seized as a result of the search of his vehicle. On July 25, 2015, the trial court held a hearing and denied the motion. Following a stipulated non-jury trial, Appellant was sentenced to five to ten years' imprisonment for possession of firearms prohibited and a consecutive term of seven years' probation for firearms not to be carried without a license.[5] This timely appeal followed. Appellant filed a court ordered Pa.R.A.P. 1925(b)

---

[5] Appellant misstates the court's sentence for firearms not to be carried without a license. **See** Appellant's Brief at 3. At sentencing, the court stated: "On Count 2, Firearms Carried Witihout a License, the Court sentences [Appellant] to seven years' State Probation consecutive to Count 1 and payment of Court costs." N.T., 11/25/14, at 14.

- 4 -

statement of errors complained of on appeal and the trial court filed a responsive opinion.

Appellant raises the following issues for our review.

> Whether the trial court erred in denying [Appellant's] Motion to Suppress when subsequent to a lawful stop by law enforcement for a motor vehicle violation and subsequent issuance and delivery of a warning by law enforcement to [Appellant], [Appellant] was unlawfully re-engaged and detained by law enforcement in violation of his constitutional rights?

> Did [sic] trial court err in denying [Appellant's] Motion to Suppress when upon completion of a motor vehicle stop, [Appellant] was unlawfully directed out of his motor vehicle which was an unlawful and illegal seizure and detention of [Appellant] and therefore any subsequent action of the [sic] law enforcement including a search, consensual or otherwise, would be a violation of [Appellant's] constitutional rights?

> Did [sic] trial court err in denying [Appellant's] Motion to Suppress when after an illegal and unlawful seizure and detention of [A]ppellant, [A]ppellant was searched?[6]

Appellant's Brief at 4.[7]

---

[6] Appellant does not address issue three in his brief. Therefore, it is abandoned on appeal. **See Commonwealth v. Dunphy**, 20 A.3d 1215, 1218 (Pa. Super. 2011).

[7] Our Rules of Appellate Procedure set forth the required contents of appellate briefs. The argument section of Appellant's brief does not comply with Rule 2119(a) which provides that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Following a two page recitation of facts, Appellant states: "Therefore the pivotal question before the suppression court was whether there was [sic] any actions of [A]ppellant subsequent to his being told he was free to go which would

Appellant contends that the investigative detention that followed his lawful traffic stop was unlawful and therefore the court erred in denying his motion to suppress the evidence seized as a result of the search of his vehicle. Appellant argues that

> [i]n the instant case the trial court incorrectly establishes reasonable suspicion for the second illegal detention on facts that were known to the officer at the time he released [Appellant], advised him he was free to leave and concluded that he was not going to search the vehicle based on those facts. The trial court cites no facts that occurred subsequent to that release that would warrant [sic] justify a second re-engagement and unlawful detention.
>
> This is directly contrary to the holding in [**Commonwealth v.**] **Ortiz**[, 786 A.2d 261 (Pa. Super. 2011).[8]]

lawfully justify the second investigative detention. This is whether the officer had new or additional information for a basis for reasonable suspicion to establish a subsequent investigation detention of [A]ppellant." Appellant's Brief at 10.

[8] As will be discussed *infra*, Appellant's reliance on **Ortiz** is unavailing as it has been overruled for the proposition cited by Appellant in **Commonwealth v Kemp**, 961 A.2d 1247, 1260 (Pa. Super. 2008) (*en banc*). We note that Appellant baldly asserts "that consent to search that followed the unlawful investigative detention was clearly a product of the illegal detention and therefore not a valid consent to search." Appellant's Brief at 13. Appellant cites to **Ortiz**, *supra*, at 266-267. **See id.** In passing, we note that Appellant concedes he "consented to the search of the vehicle at the second re-engagement." **Id.** at 6. Furthermore, there is no indication in the record, and does Appellant does not claim, that the consent was "the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." **Commonwealth v. Strickler**, 757 A.2d 884, 901 (Pa. 2000). At the suppression hearing, Trooper Sergio Colon testified, *inter alia*, as follows:

J.A25040/15

Appellant's Brief at 12.

Our review of the suppression court's denial of a motion to suppress is governed by the following principles:

Q: Did you ask [Appellant] if he would consent to search of the vehicle?

A: Yes, I did.

Q: And he gave you verbal consent?

A: Yes, he did.

Q: And is it your policy or the State—is it the State Police policy or is it your policy to get written consent as well?

A: It's—yes, this is a department form that is required to be filled out by us.

Q: Okay. When you . . .

A: When searching a vehicle.

Q: When you verbally asked [Appellant] if he [sic] could search the vehicle, did he hesitate?

A: He blighted (ph) [sic] away from me and, no, he said, go ahead, sir, you can do whatever you like and kind of backed up.

Q: And when you put the form in front of him to sign, similarly did he hesitate to sign the form?

A: No, he slightly—he read it over, didn't have any questions . . . .

N.T., 7/25/15, at 41-42.

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

**Commonwealth v. Jones**, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted).

This Court enunciated the test for determining the nature of the encounter when the police continue to question an individual following a traffic stop as follows:

In **Commonwealth v. Strickler**, [ ] 757 A.2d 884 ([Pa.] 2000), our Supreme Court analyzed under what circumstances a police interdiction can devolve into a mere encounter following a traffic stop when police continue to question the person after the reason for the traffic stop has concluded. The Supreme Court in **Strickler** ruled that after police finish processing a traffic infraction, the determination of whether a continuing interdiction constitutes a mere encounter or a constitutional seizure centers upon whether an individual would objectively believe that he was free to end the encounter and refuse a request to answer questions.

Our Supreme Court adopted a totality-of-the-circumstances approach. It delineated a non-exclusive list of factors to be used in making this assessment. Those factors include 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location and time of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) "the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, . . . thus suggesting to a citizen that his movements may remain subject to police restraint," and 9) whether there was an express admonition to the effect that the citizen-subject is free to depart, which "is a potent, objective factor." Our Supreme Court also observed that when an individual has been subjected to a valid detention but police continue to engage the person in conversation, the person is less likely to reasonably believe that he is actually free to leave the scene.

*Kemp*, 961 A.2d at 1253 (citations omitted). Furthermore,

[w]e are required to apply a "totality of the circumstances" test in assessing whether police had reasonable suspicion to conduct an investigatory detention. Therefore, we overrule *Ortiz* and [*Commonwealth v.*] *Johnson*[, 833 A.2d 755 (Pa. Super. 2003)] to the extent that they hold that facts gathered during a valid traffic stop cannot be utilized to justify an investigatory detention occurring after a police officer has indicated that a defendant is free to leave. *Commonwealth v. Jacobs*, 900 A.2d 368, 377 n. 9 (Pa. Super. 2006) (Superior Court, sitting *en banc*, can overrule panel decision by three judges).

*Id.* at 1260.

In *Commonwealth. v. Caban*, 60 A.3d 120 (Pa. Super. 2012), this Court found there was reasonable suspicion to justify an investigatory detention and opined:

In the present case, Trooper Jones gave [Yashera Renee] Veras a citation for speeding, returned her license and insurance card, and told her that she was free to leave. As Veras returned to her car, Trooper Jones asked if she would answer a few more questions. At the start, she answered the Trooper's questions, but then indicated that she "was ready to go." As she returned to her car, Trooper Jones told her to "hold tight" while he questioned [Waldemar] Caban. Based upon this factual scenario, we conclude that Caban and Veras were subjected to an investigatory detention. . . .

We also conclude, however, that the facts adduced by Trooper Jones by the time he told Veras to "hold tight" provided him with sufficient reasonable suspicion to justify the investigatory detention. To establish reasonable suspicion, the officer must "articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." To determine whether the officer had reasonable suspicion, **the totality of the circumstances must be considered**. In this regard, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience."

\* \* \*

When considering the totality of the circumstances, we need not limit our inquiry to only those facts that clearly and unmistakably indicate criminal conduct. Instead, "**even a combination of innocent facts, when taken together, may warrant further investigation by the police officer**."

*Id.* at 128-29 (citations omitted and emphases added).

In the case *sub judice*, the trial court opined:

An interaction amounts to an investigatory detention where the officer, following a valid traffic stop, instructs the individual to exit the vehicle, issues a warning, tells the individual "to have a nice day," allows the individual to

- 10 -

proceed back towards vehicle, and then subsequently re-engages the individual with further questioning.

Therefore, based upon **Kemp**, in the case *sub judice*, the interaction amounted to an investigatory detention[9] where the Trooper, following a valid traffic stop, instructed the individual to exit the vehicle, issued a citation and warning, tells the driver that he is free to leave, allowed the individual to proceed back towards his vehicle, and then subsequently re-engaged the individual with further questioning.

\* \* \*

The Trooper testified to reasonable suspicion beyond the original reasonable suspicion which led to the traffic stop. The Trooper provided the [c]ourt with unrebutted, credible testimony. The facts adduced by the Trooper during the valid traffic stop provided him with sufficient reasonable suspicion that criminal activity was afoot justifying the investigatory detention. The facts included:

Initially, the Trooper noted that [Appellant] appeared extremely nervous; [his] hands were physically shaking when he handed over his documents to Trooper Colon. He barely made eye contact with the Trooper.

[Appellant] provided Trooper Colon with a myriad of unsolicited information . . . .

Trooper Colon found that there was a discrepancy between the address listed on the vehicle's registration, the address on [Appellant's] license, and the information [Appellant] provided him about where he lived. Further, [Appellant] also stated that he was unaware that the registration for the vehicle was expired.

---

[9] We note Appellant makes the following statement: "In the present case, the suppression court properly denied the second re-engagement with [A]ppellant as an investigative detention. (Trial Ct. Opinion P. [)]" Appellant's Brief at 10.

- 11 -

During their exchange, [Appellant] asked Trooper Colon if he could light a cigarette, to which Trooper Colon replied yes.

During the initial traffic stop, the Trooper learned that [Appellant] had an extensive criminal history . . . . When the Trooper asked [Appellant] if he had ever been arrested before, he replied that his most recent arrest was in 2008 for a domestic charge. The Trooper testified that [Appellant's] RAP sheet established that [Appellant] was not being truthful. His most recent charge was from 2012 and did not involve a domestic charge. After re-engagement, [Appellant] continued to offer unsolicited information i.e., that he was the victim in the domestic charge and also that he was involved in a shooting and had to have a colostomy bag.

While he was writing out the citation and the warning in his patrol vehicle, Trooper Colon noticed that [Appellant] was staring back at him the entire time. . . .

[Appellant] asked Trooper Colon several questions regarding how to remedy the expired registration and where to take the citation, and how to take care of paying for it. [Appellant] also told Trooper Colon that he was on a payment plan, and that was why his license was suspended, which conflicted with what [Appellant] had said earlier in the encounter, about not knowing that his license was suspended.

Trial Ct. Op. at 6-8. The trial court concluded that, based upon the totality of the circumstances, "Trooper Colon had reasonable suspicion that criminal activity was afoot, justifying the investigatory detention." *Id.* at 8.

We discern no abuse of discretion or error of law by the trial court in denying the motion to suppress. *See Jones*, 121 A.3d at 526-27. Based upon the totality of the circumstances, the Trooper had reasonable suspicion

to justify the search of Appellant's vehicle. ***See Caban***, 60 A.3d at 128-29;

***Kemp***, 961 A.2d at 1260. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2015