J-A21033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| MICHAEL SCOTT CHANCE, | : | |
| Appellant | : | No. 3009 EDA 2015 |

Appeal from the Judgment of Sentence August 25, 2015
in the Court of Common Pleas of Chester County,
Criminal Division, No(s): CP-15-CR-0003643-2014

BEFORE: BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 24, 2016**

Michael Scott Chance ("Chance") appeals from the judgment of sentence entered following his conviction of open lewdness, and the summary offense of disorderly conduct.[1]  We affirm.

On August 7, 2014, at around 3:30 a.m., Uwchlan Township Police Officer David Coppola ("Officer Coppola") responded to a radio dispatch regarding a possible prowler or suspicious vehicle at Kidwelly Court, in the Rhondda homeowners development in Uwchlan.  Upon arriving at the scene, Officer Coppola spoke to the complainant.  The complainant told Officer Coppola that a vehicle had pulled into Kidwelly Court, after which a man exited the vehicle, left it running with the lights on, and walked to another part of the court.[2]  Aware of recent break-ins in the area, Officer Coppola

---

[1] 18 Pa.C.S.A. §§ 5901, 5503.

[2] It was established that Chance was not the man who left the vehicle.

walked in the same direction as the driver of the unattended vehicle, as indicated by the complainant. According to Officer Coppola, he heard what sounded like a car trunk or door slam. Looking in the direction of the noise, Officer Coppola saw Chance from a distance of about 30 feet. Walking about ten feet toward Chance, Officer Coppola saw that Chance was wearing black bedroom slippers, pink girls' underwear on his body, and purple panties on his head. The purple panties covered Chance's face.

From a distance of about 10 to 15 feet, Officer Coppola saw Chance appear to apply a gel to his groin area. At that time, Chance "took his right hand and stuck it into his pants and started to manipulate his genitals[,]" "apparently masturbating." N.T., 5/13/15, at 16. When Officer Coppola asked Chance what he was doing, Chance confirmed that he was masturbating. After ascertaining Chance's identity, and the fact that he lived at Kidwelly Court, Officer Coppola told Chance that he would receive his citation by mail. Officer Coppola then directed Chance to go inside his residence.

A jury found Chance guilty of the above-described charges. The trial court thereafter sentenced Chance to a minimum of one month and a maximum of 12 months in jail, with Chance eligible for work release after two weeks. The trial court further sentenced Chance to 50 hours of community service. Chance filed a post-sentence Motion. While the post-sentence Motion was pending, Chance's counsel filed a Motion for leave to

withdraw his appearance on Chance's behalf. Counsel alleged that he and Chance had a "fundamental disagreement about the proper direction of his representation[,]" and that Chance was without income. Motion for Leave to Withdraw, ¶¶ 1-2. Counsel further indicated that Chance qualified for the appointment of counsel. *Id.*, ¶ 2.

On September 9, 2015, the trial court entered an Order granting in part and denying in part Chance's post-sentence Motion.[3] On that same date, the trial court granted defense counsel's request to withdraw from representation. The trial court's Order directed Chance to apply for representation by the Public Defender's Office. Chance timely filed a *pro se* Notice of Appeal, followed by a *pro se* court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Chance now presents the following clams for our review:

1. Did the trial court commit reversible error when it denied [Chance's] request for the *corpus delicti* jury instruction?

2. Did the trial court commit reversible error by not advising [Chance] of his post[-]sentence rights[,] thus causing him undue prejudice for preparing his appeal?

3. Did the trial court commit reversible error by unduly impairing [Chance's] right of allocution?

Brief for Appellant at 4.

---

[3] Specifically, the trial court continued to require Chance to participate in the county sex offender's program. However, the trial court amended its bail condition that Chance be subject to electronic home monitoring.

Chance first claims that the trial court improperly failed to issue a *corpus delicti*[4] jury instruction. *Id.* at 8. Chance argues that a *corpus delicti* instruction was made necessary because, during the Commonwealth's opening argument, the prosecutor referred to Chance's statement to Officer Coppola (*i.e.*, that Chance was masturbating) without prior notice to Chance and prior to the admission of any trial evidence. *Id.* at 10-11. Chance argues that the trial court improperly denied his requested *corpus delicti* jury instruction, and "made matters worse by instructing the jury that: 'Before you must—before you may consider this statement as evidence against [Chance,] you must find that a crime was in fact committed.'" *Id.* at 11 (citation and emphasis omitted). According to Chance, the trial court erred by opening the "scope of consideration" beyond the open lewdness charge, thereby allowing the jurors to speculate about the existence of other crimes, including but not limited to the disorderly conduct charge. *Id.* Chance contends that the trial court's instruction did not explain how the jury was supposed to weigh Chance's statement, "namely that the *corpus delicti* rule additionally requires that the Commonwealth prove to the jury's satisfaction beyond a reasonable doubt, the *corpus delicti* of the crimes charged." *Id.* (internal quotation marks and citation omitted).

---

[4] *Corpus delicti*, "the body of the crime," is defined as "a wrong committed by criminal means, and consisting of the occurrence of a loss or injury, and some person's criminal conduct as the source of that loss or injury." *Commonwealth v. Ware*, 329 A.2d 258, 274 (Pa. 1974).

"The relevant inquiry for [an appellate court,] when reviewing a trial court's failure to give a jury instruction, is whether such charge was warranted by the evidence in the case." ***Commonwealth v. Baker***, 963 A.2d 495, 506 (Pa. Super. 2008).

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [a]ppellant was prejudiced by that refusal.

***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted).

"The *corpus delicti* rule places the burden on the prosecution to establish that a crime has occurred before a confession or admission of the accused connecting him to the crime can be admitted." ***Commonwealth v. Dupre***, 866 A.2d 1089, 1097 (Pa. Super. 2005).[5] The purpose of this rule is to prevent the hasty and unguarded character that often attaches to

---

[5] We note that "the order in which evidence is presented is a matter committed to the trial court's discretion, and its rulings will not be disturbed absent an abuse of that discretion." ***Commonwealth v. Edwards***, 903 A.2d 1139, 1158-59 (Pa. 2006).

- 5 -

confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed. ***Commonwealth v. Otterson***, 947 A.2d 1239, 1249 (Pa. Super. 2008). However, our Pennsylvania Supreme Court has explained that "the *corpus delicti* rule should not be viewed as a condition precedent to the admissibility of the statements or confessions of the accused. ***Ware***, 329 A.2d at 274 n.41; ***accord***, ***Commonwealth v. Taylor***, 831 A.2d 587, 590-91 (Pa. 2003).

> Rather, the rule seeks to ensure that the Commonwealth has established the occurrence of a crime before introducing the statements or confessions of the accused to demonstrate that the accused committed the crime. The rule was adopted to avoid the injustice of a conviction where no crime exists . . . . The fact that a crime has been committed by someone must be shown before a confession will be received.

***Taylor***, 831 A.2d at 590-91 (citation and internal quotation marks omitted).

A person commits the crime of disorderly conduct if, "with the intent to cause public inconvenience, annoyance or alarm[,] or recklessly creating a risk thereof, he … makes an obscene gesture[,] or … creates a physically offense condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)(3), (4). In a prosecution for open lewdness, the *corpus delicti* consists of proof that the person "does any lewd act which he knows is likely to be observed by others who would be affronted or alarmed." 18 Pa.C.S.A. § 5901.

As the trial court observed in its Opinion,

> Officer [] Coppola … testified that on August 7, 2014[,] at around 3:30 a.m., he received a radio call of a suspicious vehicle

at Kidwelly Court …. When he was investigating, he observed [Chance] in the parking lot of the development wearing only black bedroom slippers, pink girl's underwear on his body, and purple girl's panties pulled over his head. He then saw [Chance] apply gel to his groin area and begin to masturbate.

Trial Court Opinion, 1/29/16, at 3; *see also* N.T., 5/13/15, at 13-14 (wherein Officer Coppola described his encounter with Chance). Further, at trial, Officer Coppola testified that

I did ask [Chance] if he had just pulled into the court because I had at some point told him that that's—we were there investigating a suspicious vehicle that had pulled in, and that he said no, he's been home for a while and he lives right there, and he had pointed to his residence[,] which he was directly in front of.

N.T., 5/13/15, at 19.[6] Thus, the Commonwealth presented evidence, independent of Chance's inculpatory statement, that Chance had left his residence, attired in pink underwear and wearing purple underwear on his head, to rub his groin area in a public parking lot. Under these circumstances, we agree with the trial court's determination that a *corpus delicti* jury instruction was not warranted, as the Commonwealth had established the crimes by independent evidence. *See* Trial Court Opinion, 1/29/16, at 4.

---

[6] Chance's statement that he had been at his residence is not inculpatory. Accordingly, the *corpus delicti* rule does not apply. *See Commonwealth v. Persichini*, 737 A.2d 1208, 1213 (Pa. 1999) (recognizing that only inculpatory statements are subject to the *corpus delicti* rule, but equally dividing as to whether the two-tiered approach to the *corpus delicti* rule should be abandoned).

Chance next claims that the trial court improperly failed to advise him of his right to file post-sentence motions and an appeal, pursuant to Pa.R.Crim.P. 704[7] and 720.[8] Brief for Appellant at 15-16. Chance claims that there is "no excusing such a fundamental breakdown in judicial, statutory and constitutional due process." *Id.* at 16. Further, Chance argues that the trial court improperly allowed his counsel to withdraw on the day that the post-sentence Motion was denied. *Id.* at 17. Chance argues that the trial court "stranded him without counsel with the appeal clock ticking." *Id.* Therefore, Chance asserts, this Court should remand the case for resentencing, so that the errors can be corrected. *Id.* at 19.

Our review of the record discloses that Chance, assisted by counsel, timely filed his post-sentence Motion. Thus, the remedy of a remand so the court could properly advise Chance of his right to file a post-sentence motion is moot.

Regarding Chance's claim that the trial court improperly permitted his counsel to withdraw prior to filing a notice of appeal, the trial court stated the following:

---

[7] Rule 704 requires, *inter alia*, that at sentencing, a trial judge "shall determine on the record" that the defendant has been advised of his right to file a post-sentence motion and the applicable time limitations, as well as the right to the assistance of counsel in preparing such motions. Pa.R.Crim.P. 704(C)(3).

[8] Rule 720 sets forth the post-sentence procedures to be followed by the trial court and the timing applicable for post-sentence motions and the filing of a notice of appeal.

[Chance] fails to acknowledge, however, that on the same date his Motion for Post-Sentence Relief was decided, the court also entered an Order permitting defense counsel to withdraw. In that Order dated September 9, 2015, [Chance] was directed to promptly apply for representation by the Chester County Public Defender's Office. As of the date of [the trial court's] Opinion (more than four (4) months later), [Chance] has failed to do so. He also has not filed a motion to proceed *in forma pauperis*. Thus, [Chance's] failure to be represented by counsel during the pendency of this appeal is a result of [Chance's] failure to apply for representation by the Public Defender's Office and/or to obtain private counsel on his own.

As [Chance] filed a timely appeal in this matter and suffered no prejudice[] by the trial judge's failure to advise him of his appellate rights, this allegation of error does not entitle him [to] any relief.

Trial Court Opinion, 1/29/16, at 6. We agree, and affirm on this basis.[9] **See id.**

Finally, Chance argues that the trial court unduly impaired his right of allocution at the sentencing hearing. Brief for Appellant at 19. Chance takes exception to the trial court's interruptions of his statements at the sentencing hearing. **Id.** at 22.

The failure to grant a defendant the right of allocution constitutes legal error. **See Commonwealth v. Jacobs**, 900 A.2d 368, 376-77 (Pa. Super. 2006) (*en banc*). However, like most legal errors, a claim that the defendant was denied his right to allocution is nevertheless waivable if not raised before the trial court. **Id.**

---

[9] We further note that Chance is presently represented by counsel, and has not set forth any additional issues that he would have raised had he been properly advised pursuant to Pa.R.Crim.P. 704 and 720.

Here, Chance exercised his right of allocution at sentencing. **See** N.T., 8/25/15, at 16-17 (wherein, after the trial court informed Chance that it had received and read Chance's letter to the court and the pre-sentence investigation report, Chance expressed his shame over the incident). When specifically asked whether Chance wished to address the sentence, Chance responded in the negative. **Id.** at 21. Thus, Chance was afforded his right of allocution regarding his sentence, but waived his right of further allocation regarding the sentencing. As such, Chance's claim lacks support in the record, and is waived. **See** Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2016