timony on issue of trial counsel's ineffectiveness).[2]

Justice EAKIN joins this opinion.

COMMONWEALTH of Pennsylvania,
Appellee

v.

Fatayshia JACOBS, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 15, 2005.

Filed May 1, 2006.

2. On the separate question of the appellate standard of review, I agree with the Chief Justice that, evidentiary and credibility questions aside, no particular deference is due to a PCRA judge's determination of the *Strickland* question. Indeed, this precept was a prime basis for my penalty-phase dissent in *Collins*. *See* 888 A.2d at 590 (Castille, J., joined by Eakin, J., concurring and dissenting) ("Although this Court must defer to the credibility findings of the PCRA court in cases where contested material facts are at issue, the determination of the reasonableness of counsel's conduct under the Sixth Amendment—the performance prong of *Strickland*—is not one warranting any particular deference to the PCRA hearing judge, particularly where, as here, that judge is not the same judge who presided at trial.").

Karl L. Morgan, Public Defender, Philadelphia, for appellant.

Jonathan M. Levy, Assistant District Attorney, Philadelphia, for Com., appellee.

BEFORE: DEL SOLE, P.J., JOYCE, MUSMANNO, LALLY–GREEN, TODD, KLEIN, BENDER, BOWES, and GANTMAN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Fatayshia Jacobs, appeals from the judgment of sentence entered on January 22, 2004. We affirm.

¶ 2 The factual and procedural history of the case is as follows. On December 3, 2003, Appellant pled no contest to one count of attempted murder. The charge arose from an incident on January 9, 2003, when Appellant attempted to smother her seven-week-old daughter with a pillow.[1]

¶ 3 At the sentencing hearing, Appellant's counsel gave a lengthy and eloquent plea for leniency and rehabilitation. Counsel argued, *inter alia*, that the criminal act was an irrational outburst stemming from untreated mental illness and post-partum depression. N.T., 1/22/2004, at 5–20. At the end of her argument, counsel stated:

Finally, Your Honor, I have spoken with Miss Jacobs about her right to allocution. She's very nervous about speaking in court and she asked me to tell the court what she told me in the booth here just this morning.

She relayed to me that she really does completely regret her actions on the day of January 9th of 2003. That [the child] is very important to her. That it is the one person that she was hoping to have a good relationship with and that she hopes that this court will show mercy on her in your sentence and allow her to have some kind of visitation or relationship with her by lifting the stay away order.

Thank you, Your Honor.

*Id.* at 20–21. The prosecutor then responded, *inter alia*, that Appellant was willfully non-compliant with her medication program and with the many social services that had been offered to her. *Id.* at 21–30. The prosecutor also argued that Appellant had attempted to starve the child *in utero* while Appellant was in jail for drug offenses. *Id.* at 22.

¶ 4 After the court took a brief recess, the following exchange took place:

APPELLANT'S COUNSEL: Miss Jacobs informed me she would like to say a few words to the court.

THE COURT: All right.

APPELLANT: I would like to thank you this morning for letting me speak basically about the case. I believe some things were exaggerated and I received help and I have extra help for my mental illness and I have been taking medication for years. I have been going to Progressions and programs to help me, yes. And at the time when I did this to

---

1. According to the Commonwealth, the baby did not suffer lasting damage due to the prompt intervention of Appellant's father.

my child I wasn't in my right frame of mind, and also regret that I did that. And I did say those things that I did say[2] but I didn't mean them at the time. And I feel as though it's very important I should receive visitation rights with my daughter because she's the only thing that I have as a family right now.

It just seems like I have a lot of potential and stuff like that and I know that I won't be coming back and forth to jail because that's not how I am, you know. I know if I have one chance I know I can better myself and I know I can go right. It's not like I sat there my whole life and got myself in trouble. I also tried to be straight and arrow [sic]. I worked with kids. I have taken care of aunt's kids for years and I love children too, you know.

And I think that's all I really want to say, Your Honor. And thank you, again.

THE COURT: All right.

The protection of children is one of the things that this court takes very seriously. Innocent children being forced into situations, born into situations where they are beaten, smothered, it's very upsetting to this court.

And this court on its own, just out of its own curiosity, has looked into postpartum depression which I really feel is something that certain women go through that is the closest thing to a living hell.

However, while there is some part of postpartum depression in this particular case, there was also an attempt before the child was born.

APPELLANT: That is not true, Your Honor.

THE COURT: Don't interrupt me, please.

APPELLANT: Sorry.

THE COURT: Don't interrupt me. Don't interrupt me. What you did to one of God's treasures.

All right. Stand up, please.

APPELLANT'S COUNSEL: May I say one thing.

THE COURT: Certainly.

APPELLANT'S COUNSEL: I heard what [the prosecutor] said about the attempt to starve herself beforehand and I didn't see that in the reports also. So I don't know where that information is coming from.

PROSECUTOR: That came from the victim impact statement given by Mrs. Jacobs.

APPELLANT'S COUNSEL: It was my understanding that Fatayshia was living in Reading at that time. So I don't know where she got that information.

PROSECUTOR: It says, Your Honor, that Fatayshia told Mrs. Jacobs about that.

THE COURT: Well, I'm going to address the whole thing.

If you look, there's been a systematic recklessness, recklessness by this person towards that child, towards that child.

*Id.* at 30–34. The court then imposed a prison term of five to ten years, plus a consecutive term of ten years' probation. The sentence fell within the standard range of the sentencing guidelines. Appellant did not file post-sentence motions. This appeal followed.[3]

**2.** According to the prosecutor, both before and after the incident, Appellant stated that she wanted to kill the child, that she did not want the child, and that she did not want the child anymore. *Id.* at 24–25.

**3.** The trial court did not order Appellant to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P.1925. The trial court issued a Rule 1925 opinion, stating that the plea colloquy was valid.

¶ 5 On appeal to a three-judge panel of this Court, Appellant argued that the trial court denied her right to allocution. A majority of the panel held that Appellant's claim was not waived, even though she failed to raise it in the trial court, because her claim implicated the legality of the sentence. The panel majority relied, *inter alia*, on this Court's recent decision in *Commonwealth v. Newton*, 875 A.2d 1088 (Pa.Super.2005), *appeal denied*, —— Pa. ——, 890 A.2d 1058 (Pa. December 15, 2005). The panel further reasoned that on the merits, Appellant was not denied her right to allocution. The third member of the panel reasoned that the claim was waived.

¶ 6 The Commonwealth filed a petition for reargument, despite the fact that it prevailed with the three-judge panel. This Court granted the Commonwealth's reargument petition on August 3, 2005.

¶ 7 On reargument, Appellant raises two issues:

1. Should not this Court quash this Commonwealth reargument as it is inconsistent with the intent of Pa. R.A.P. 2543, and does not implicate any of the considerations governing allowance of appeal?
2. Did not the lower court infringe upon, and violate Appellant's right to allocution, requiring a new sentencing hearing?

Appellant's Substituted Brief on Reargument at 3.

¶ 8 First, Appellant argues that this Court should quash this reargument. Appellant notes that the Commonwealth prevailed with the three-judge panel. Appellant argues: "the fact that the Commonwealth won, but did not win in a manner to its liking, is not a 'compelling reason' for allowing reargument under [Pa.R.A.P.] 2543." *Id.* at 10. Appellant further argues that reargument is im-

proper in this case because the three-judge panel's decision was not inconsistent with published precedent; in fact, it was completely consistent with this Court's recent opinion in *Newton*. *Id.* at 9–10.

¶ 9 Rule 2543 of the Rules of Appellate Procedure sets forth the "Considerations Governing Allowance of Reargument" in pertinent part as follows:

Reargument before an appellate court is not a matter of right, but of sound judicial discretion, and reargument will be allowed only when there are compelling reasons therefor[.]

[Official] Note: The following, while neither controlling nor fully measuring the discretion of the court, indicate the character of the reasons which will be considered:

(1) Where the decision is by a panel of the court and it appears that the decision may be inconsistent with a different panel of the same court on the same subject.

(2) Where the court has overlooked or misapprehended a fact of record material to the outcome of the case.

(3) Where the court has overlooked or misapprehended (as by misquotation of text or misstatement of result) a controlling or directly relevant authority.

(4) Where a controlling or directly relevant authority relied upon by the court has been expressly reversed, modified, overruled or otherwise materially affected during the pendency of the matter sub judice, and no notice thereof was given to the court pursuant to Rule 2501(b) (change in status of authorities).

Pa.R.A.P. 2543 and Official Note. This Court's Internal Operating Procedures add a fifth consideration: "Where the issues have potential for a significant impact

upon developing law or public policy." Superior Court I.O.P. § 65.38(B)(5).

¶ 10 We decline to quash the Commonwealth's reargument petition for several reasons. First, the Rules of Appellate Procedure and our Internal Operating Procedures do not prohibit a prevailing party from filing a reargument petition.[4] Second, while the panel's decision was consistent with *Newton*, it was arguably inconsistent with another recent *en banc* case from this Court: *Commonwealth v. Berry*, 877 A.2d 479 (Pa.Super.2005). Reargument in the instant case will provide this Court an opportunity to reexamine *Newton*, *Berry*, and other pertinent case law on the question of whether allocution implicates the legality of the sentence.[5] Finally, we note that this issue appears to be arising with some regularity. Indeed, reargument will provide guidance in a companion case to the instant case, *Commonwealth v. Jermaine Williams*, 900 A.2d 906, 2006 WL 1412906 (Pa.Super.2006). For these reasons, in the exercise of discretion, we decline to quash.

¶ 11 We now turn to Appellant's second argument. Appellant argues that the trial court denied her right to allocution by interrupting her while she was attempting to correct the trial court's understanding of a critical matter related to sentencing.

¶ 12 Generally, "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Appellant could have raised her allocution claim either at the sentencing hearing itself, or in timely post-sentence motions. *See* Pa.R.Crim.P. 720.

Appellant did not take either course. As such, the issue is waived, unless an exception exists to excuse waiver.

¶ 13 Challenges to the legality of the sentence are not waivable. *Commonwealth v. Vasquez*, 560 Pa. 381, 744 A.2d 1280, 1284 (2000). The question in this case is whether a denial of allocution implicates the legality of the sentence.

¶ 14 The question of whether a claim implicates the legality of the sentence arises often, and in many different contexts. In *Vasquez*, our Supreme Court stated: "when a trial court imposes a sentence **outside of the legal parameters prescribed by the applicable statute**, the sentence is illegal and should be remanded for correction." *Id.* (emphasis added). Similarly, and more recently, the Supreme Court stated that "an illegal sentence is one that exceeds the statutory limits." *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127, 1131 (2003).

¶ 15 Various types of claims do implicate the legality of the sentence, because they implicate the trial court's statutory authority to impose a certain sentence. These include:

- Failure to determine the amount of restitution at sentencing, in violation of 18 Pa.C.S.A. § 1106(c)(2) (*see Commonwealth v. Mariani*, 869 A.2d 484 (Pa.Super.2005));

- Sentencing a defendant to a maximum term of four years, based on a legal error that the offense should be graded as a **first**-degree misdemeanor, when in fact the offense should have been graded as a **second**-degree misdemeanor carrying a statutory maxi-

---

**4.** We recognize, of course, that prevailing parties rarely file reargument petitions. Reasonable minds may differ as to whether "aggrievement" should be a prerequisite for filing a reargument petition. We simply note that there is no such requirement in the rules as they currently stand.

**5.** We recognize that this Court denied *en banc* reargument in *Newton* itself.

mum of two years (*see Commonwealth v. Kinney,* 777 A.2d 492 (Pa.Super.2001));

- Installation of an ignition interlock device, in the absence of statutory authority to impose this punishment (*see Commonwealth v. Randal,* 837 A.2d 1211 (Pa.Super.2003));

- Failure to grant credit for time served, as required by 42 Pa.C.S.A. § 9760 (*see Commonwealth v. Beck,* 848 A.2d 987 (Pa.Super.2004); *Commonwealth v. Hollawell,* [413 Pa.Super. 42] 604 A.2d 723 (Pa.[Super.]1992));

- Failure to impose a mandatory minimum sentence, as required by 42 Pa. C.S.A. § 9714 (*see Commonwealth v. Shiffler,* [583 Pa. 478] 879 A.2d 185 (Pa.2005); *Commonwealth v. Ausberry,* 2006 PA Super 7 [891 A.2d 752]); and

- Failure to ensure that the minimum sentence is not greater than half the maximum, in violation of 42 Pa.C.S.A. § 9756(b) (*see Commonwealth v. Hockenberry,* [455 Pa.Super. 626] 689 A.2d 283 (Pa.Super.1997), *appeal denied,* [548 Pa. 645] 695 A.2d 784 (Pa. 1997)).

¶ 16 Next, our Courts have long recognized "one non-statutory example of an illegal sentence: namely, a claim that sentences should merge. This particular example is based on longstanding Supreme Court precedent regarding double jeopardy." *Berry,* 877 A.2d at 483 (citation omitted). In *Berry,* this Court recently explained:

Thus, our case law draws a careful distinction between truly "illegal" sentences, and sentences which may have been the product of some type of legal error. [*Commonwealth v. Archer,* 722 A.2d 203, 209–210 (Pa.Super.1998) (*en banc* )] and its progeny have established that the term "illegal sentence" is a term of art that our Courts apply narrowly, to a relatively small class of cases.

*Id.*

¶ 17 The rule that most legal errors in sentencing are waivable is consistent with our Supreme Court's long-standing rejection of the "plain error" doctrine. *See Commonwealth v. Edmondson,* 553 Pa. 160, 718 A.2d 751, 753 (1998) (even errors of a constitutional dimension are waivable), *citing Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974) (eliminating the "basic and fundamental error" doctrine in Pennsylvania criminal cases).[6]

**6.** At this point, we will briefly address an issue which has recently produced a fair measure of debate in our Supreme Court. Recently, our Supreme Court held that "because a challenge to a sentence premised upon *Apprendi* [*v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)] implicates the legality of that sentence, it cannot be waived on appeal." *Commonwealth v. Roney,* 581 Pa. 587, 866 A.2d 351, 359 (2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 139, 163 L.Ed.2d 141 (2005). In support of this proposition, the Court cited two cases: *Commonwealth v. Aponte,* 579 Pa. 246, 855 A.2d 800, 801 n. 2 (2004), *cert. denied,* 543 U.S. 1063, 125 S.Ct. 886, 160 L.Ed.2d 792 (2005) and *Commonwealth v. Wynn,* 567 Pa. 183, 786 A.2d 202 (2001) (*per curiam* ). Justice Castille, in a concurring opinion, reasoned that

the Majority's rule in *Roney* was overbroad and unsupported by either the footnote in *Aponte* or the *per curiam* decision in *Wynn.* Indeed, in *Wynn,* the Court granted *allocatur* to decide whether a constitutional challenge to a sentence generally implicates the legality of the sentence. *See id.* (Saylor, J., dissenting). Rather than issuing an opinion on that topic, the Court in *Wynn* simply reversed and remanded on the merits in a two-sentence order. *Id.*

In the years since *Wynn* was decided in 2002, our Supreme Court has not squarely addressed the issue for which the Court had granted allowance of appeal: namely, whether all sentencing errors of a constitutional dimension implicate the legality of the sentence. *See McCray v. Pa. Dep't of Corr.,* 582

¶ 18 In *Archer*, this Court, sitting *en banc*, drew a distinction between non-waivable challenges to the legality of a sentence, and waivable challenges to the discretionary aspects of a sentence, as follows:

A legal question is distinct from legality of sentence. An illegal sentence can never be waived and may be reviewed sua sponte by this Court. An illegal sentence is one that exceeds the statutory limits. *Commonwealth v. Ellis*, 700 A.2d 948, 958 (Pa.Super.1997). *See also Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20 (1994) (imposition of separate punishments for merged offenses is illegal); *Moran*, 675 A.2d at 1273 (sentence of restitution to District Attorney's office rendered illegal pursuant to 42 Pa.C.S.A. § 9721(c)). These cases all involve the authority of the court to impose a given sentence: the court was without jurisdiction to impose the sentence, resulting in an illegal sentence.

With the exception of imposing an illegal sentence, the legislature has vested in the trial court broad discretion to impose a sentence in each case which comes before it. *Commonwealth v. Tuladziecki*, 513 Pa. 508, 515, 522 A.2d 17, 20 (1987). "It is well established that a

sentencing court can impose a sentence that is the maximum period authorized by statute." [*Commonwealth v. Saranchak*, [544 Pa. 158] 675 A.2d 268, 277 (Pa.1995 [1996])]; 42 Pa.C.S.A. § 9756(a).

Conversely, a legal question is presented in every claim framed by an appellant. An appellate court can only pass upon the legal questions which come before it. Even though Appellant has presented a legal question, this fact alone does not automatically qualify his claim as appealable as of right.

*Archer*, 722 A.2d at 209–210.

¶ 19 In *Archer*, this Court held that the miscalculation of an offense gravity score was a waivable challenge to the discretionary aspects of the sentence. The Court came to this conclusion even though trial courts do not, of course, have the "discretion" to make patent and obvious mathematical errors that work to the detriment of criminal defendants. *See id.; Commonwealth v. Medley*, 725 A.2d 1225, 1228 (Pa.Super.1999), *appeal denied*, 561 Pa. 672, 749 A.2d 468 (2000). Even where the court has committed such an error, the defendant must preserve the issue by raising it with the sentencing court. *Id.*

Pa. 440, 872 A.2d 1127, 1134 (2005) (Saylor, J., concurring) (there exists a "prevailing uncertainty concerning the breadth of the legality-of-sentence exception to general principles of waiver and preclusion").

Thus, so far as we can discern, the Court's decision in *Roney* is currently limited to challenges based on *Apprendi*. While the rule in *Apprendi* is based on the Sixth Amendment right to a jury trial, it is also linked to the traditional notion of an illegal sentence being one that exceeds the statutory maximum. *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved be-

yond a reasonable doubt."); *see also Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (the " 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant"); *Commonwealth v. Kleinicke*, 2006 PA Super 48, 895 A.2d 562 (*en banc* ) (imposition of mandatory minimum sentence did not violate *Apprendi* or *Blakely* because Pennsylvania has an indeterminate sentencing scheme); *Commonwealth v. Mitchell*, 883 A.2d 1096 (Pa.Super.2005) (same). In short, we do not read *Roney* as announcing a radical expansion in the class of cases that implicate the legality of the sentence.

¶ 20 Indeed, there are many types of serious and/or patently obvious legal errors a trial court may make in sentencing that are nevertheless waivable. For example, by statute, trial courts must state the reasons for a sentence on the record. 42 Pa.C.S.A. § 9721(b). The statute even goes so far as to state that failure to comply with this requirement is grounds for resentencing. *Id.* Yet, failure to raise this claim in the sentencing court renders it waived. *Commonwealth v. Mann,* 820 A.2d 788, 794 (Pa.Super.2003), *appeal denied,* 574 Pa. 759, 831 A.2d 599 (2003); *see also Commonwealth v. McAfee,* 849 A.2d 270, 274 (Pa.Super.2004) ("If a sentencing court considers improper factors in imposing sentence upon a defendant, although the sentence thereby imposed **is not rendered illegal**, the court has committed an abuse of discretion") (emphasis added), *appeal denied,* 580 Pa. 695, 860 A.2d 122 (2004); *Commonwealth v. Wilson,* 829 A.2d 1194, 1198–1199 (Pa.Super.2003) (imposition of a school zone enhancement to the sentencing guidelines is a challenge to the discretionary aspects of the sentence, because it does not concern a mandatory minimum sentence).

¶ 21 With this background in mind, we now turn to Appellant's claim that the right of allocution implicates the legality of the sentence. Allocution is governed by Pa.R.Crim.P. 704(C)(1), which states: "At the time of sentencing, the judge shall afford the defendant the opportunity to make a statement in his or her behalf and shall afford counsel for both parties the opportunity to present information and argument relative to sentencing." *Id.; see also* Pa.R.Crim.P. 708(C)(1) (identical provision for allocution following revocation of probation or parole).

¶ 22 The *Newton* Court astutely noted that the right of allocution:

is not a statutory mandate, it is a rule of court created in accordance with [our Supreme Court's] constitutionally-granted authority. Further, our Supreme Court has indicated that the right of allocution is of paramount importance, and it had unequivocally stated that the sentencing court has a mandatory duty to advise a defendant of his right of allocution and that a defendant who establishes a violation need not demonstrate prejudice in order to obtain relief.

*Newton,* 875 A.2d at 1091, *citing Commonwealth v. Thomas,* 520 Pa. 206, 553 A.2d 918 (1989). The *Thomas* Court set forth the significance and ancient origin of the right, as follows:

The right to personally address the court prior to sentencing is of ancient origin. Often referred to as the 'ancient inquiry,' the practice originated in the English common law where, as early as 1689, any failure to permit a defendant to plead for mercy required reversal. Although at some points in our history the right has been limited, *see, e.g. Commonwealth v. Gates,* 429 Pa. 453, 240 A.2d 815 (1968), *Commonwealth v. Senauskas,* 327 Pa. 541, 194 A. 646 (1937), our modern cases have expressly rejected the notion that allocution is an anachronism in modern criminal practice. In *Commonwealth v. Knighton,* 490 Pa. 16, 19, 415 A.2d 9, 11 (1980), we recently stated:

Notwithstanding the modern innovations in our law, nothing has "lessen[ed] ... the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States,* [365 U.S. 301, 304, 81 S.Ct. 653, 658, 5 L.Ed.2d 670, 673 (1961) *reh'g. denied*

365 U.S. 890, 81 S.Ct. 1024, 6 L.Ed.2d 201].

*Thomas,* 553 A.2d at 919.

¶ 23 Prior to *Newton,* our appellate courts had not squarely ruled that a denial of the right of allocution is a non-waivable challenge to the legality of the sentence.[7] Indeed, the sparse case law that did exist prior to *Newton* appears to be to the contrary. For example, in *Commonwealth v. Ferrara,* 487 Pa. 392, 409 A.2d 407 (1979), our Supreme Court disposed of a sentencing claim summarily, as follows: "Appellants also claim that the lower court erred in not providing them with an opportunity 'to argue relative to the sentence.' This argument was not raised in the lower court and therefore, is waived." *Id.* at 412 n. 6, *citing, inter alia, Clair, supra* (eliminating the "basic and fundamental error" doctrine in Pennsylvania criminal cases).[8]

¶ 24 Finally, as early as 1962, the United States Supreme Court rejected the notion that failure to grant allocution creates an illegal sentence. *Hill v. U.S.,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). The Court wrote: "[t]he sentence in this case was not illegal. The punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed for the same offense, nor were **the terms of the sentence itself** legally or constitutionally invalid in any other respect." *Id.* at 430, 82 S.Ct. 468 (emphasis added).

¶ 25 Based on the foregoing authorities, we conclude that a denial of the right of allocution does not create a non-waivable challenge to the legality of the sentence. The trial court certainly had the statutory authority to impose the sentence that it did. Moreover, the sentence does not implicate issues of merger, or any issues involving *Apprendi.* In short, Appellant's claim does not directly implicate the

---

7. A number of appellate cases have granted relief on the merits of an allocution issue without mentioning waiver. For example, in *Knighton,* it is unclear whether the defendant raised the allocution issue with the sentencing court. The Superior Court's opinion indicates that the defendant filed post-trial motions. *Commonwealth v. Knighton,* 251 Pa.Super. 299, 380 A.2d 789 (1977). The Supreme Court's opinion in *Knighton* states that the sentence was "illegally imposed" because the sentencing court did not afford the defendant the right of allocution. *Knighton,* 415 A.2d at 10. In neither case, however, did the Court address any waiver issues. *See also Commonwealth v. Barzyk,* 692 A.2d 211 (Pa.Super.1997) (vacating judgment of sentence for failure to provide allocution, without addressing waiver); *Commonwealth v. Anderson,* 412 Pa.Super. 527, 603 A.2d 1060 (1992)(same).

In *Thomas,* the defendant raised the allocution claim in a petition under the Post Conviction Hearing Act (PCHA), the precursor to the current Post Conviction Relief Act (PCRA). The *Thomas* Court did not rule on any waiver issues. *See also Commonwealth v. Clark,* 354

Pa.Super. 366, 511 A.2d 1382 (1986) (same), *appeal denied,* 513 Pa. 633, 520 A.2d 1384 (1987); *Commonwealth v. Hague,* 840 A.2d 1018 (Pa.Super.2003) (raising allocution in the context of ineffectiveness of counsel under the PCRA), *appeal denied,* 878 A.2d 863 (2005); *Commonwealth v. Tigney,* 730 A.2d 968 (Pa.Super.1999) (raising allocution issue on direct appeal in the context of counsel's ineffectiveness).

In *Berry,* this Court stated that challenges to the legality of the sentence are limited to the "limited class of cases" set forth above. Judge Klein, in dissent, reasoned that claims outside this "limited class" may implicate the legality of the sentence. In support of this position, Judge Klein cited *Newton.* The *Berry* Majority took no position on this issue.

8. In contrast, the federal courts have retained a deceptively complex "plain error" analysis. In *U.S. v. Adams,* 252 F.3d 276 (3rd Cir. 2001), the Third Circuit Court of Appeals engaged in a scholarly, historical analysis of the treatment of allocution in the federal courts. The *Adams* Court concluded that the denial of allocution did constitute "plain error" where prejudice is presumed. *Id.* at 288–289.

authority of the court to impose either the structure or term of the sentence itself. Rather, allocution is an underlying process through which the defendant is given the opportunity to speak, and through which the court may be inclined to grant leniency. Failure to grant a defendant this important right undoubtedly constitutes legal error. *Thomas.* On the other hand, like most legal errors, it is nevertheless waivable under Pennsylvania law.[9] Accordingly, we hold that Appellant's allocution claim is waived because it was not raised with the trial court.

¶ 26 Judgment of sentence affirmed.

¶ 27 KLEIN, J.; files Concurring Statement.

¶ 28 BENDER, J.; joins Concurring Statement.

CONCURRING STATEMENT BY KLEIN, J.:

¶ 1 In this case, it seems clear that Jacobs was *not* denied her right to allocution. As noted by the majority, she made a statement to the court, finishing by saying "And I think that's all I really want to say, Your Honor. And I thank you, again." Although Jacobs subsequently wanted to dispute a statement by the judge concerning her alleged prior attempt to starve herself, that does not implicate the right of allocution of which she already had availed herself; rather, it consists of an attempt to correct a misimpression by the judge, which, in any event, is better done by counsel, and in fact *was* done by counsel. Therefore, I agree that the judgment of sentence should be affirmed be-cause (a) Jacobs *was* given her right to allocution and exercised it; and (b) her effort to correct an alleged misapprehension by the judge was best left to counsel who attempted to make the correction.

¶ 2 I write separately, however, because I do not find it appropriate to address such a fundamental constitutional right as the right of allocution in *dicta,* particularly where the Commonwealth *prevailed* with the panel below. It is clear from the record that allocution was *not* denied by the lower court.

¶ 3 The majority's statement that denial of the right to allocution is *not* such a violation of a fundamental right that the sentence is nonetheless legal is not essential to the disposition of this case.

¶ 4 Moreover, I believe it is particularly inappropriate to overrule the prior holding of this Court in *Commonwealth v. Newton,* 875 A.2d 1088 (Pa.Super.2005), in a case where it is unnecessary to reach the issue. There probably will be other cases where the right to allocution is actually denied and then there will be the opportunity to review the issue. The majority states that *Newton* was "arguably inconsistent" with another recent *en banc* case of this Court, *Commonwealth v. Berry,* 877 A.2d 479 (Pa.Super.2005). *See* Majority Opinion, —— Pa. at ——, 900 A.2d at 372. However, as this majority notes, the *Berry* majority specifically "took no position on this issue." Majority Opinion, —— Pa. at —— n. 7, 900 A.2d at 376 n. 7.[10]

¶ 5 *Newton,* on the other hand, carefully examined this precise issue. There, the Court rejected the Commonwealth's argument that the allocution claim was waived

---

**9.** Because *Newton* holds to the contrary, we are constrained to overrule that case. *Commonwealth v. Smith,* 772 A.2d 75, 78 (Pa.Super.2001) *(en banc )* ("this Court sitting *en banc* may overrule the decision of a three-judge panel of this Court"), *reversed on other* grounds *sub nom. Commonwealth v. Gatling,* 570 Pa. 34, 807 A.2d 890 (2002).

**10.** Moreover, *Newton* was decided prior to *Berry,* and our Supreme Court has since declined to review *Newton.*

because it was not raised at sentencing or in a post-sentence motion, and, citing a well-rooted line of precedent, held that allocution claims are appealable as of right. *See id.* at 1090–1091.

¶ 6 While the right of allocution is specifically provided by Pa.R.Crim.P. 704(C)(1), in a case cited by the majority, *Commonwealth v. Thomas,* 520 Pa. 206, 553 A.2d 918 (1989), our Supreme Court discussed the importance of the right of a defendant to speak for himself or herself. Speaking through former Chief Justice John P. Flaherty, the Supreme Court held that the right of allocution is so fundamental that if denied there is no need to show prejudice. In *Thomas,* the defendant never even *requested* the right of allocution, but the trial judge failed to *inform* him of his right of allocution.

¶ 7 In the wake of the instant opinion, practitioners and other courts throughout the Commonwealth will be faced with the dilemma of whether to follow the *dicta* in this *en banc* case, or the specific *holding* to the contrary by a panel of this Court in *Newton.*

¶ 8 I think we should await a case where a trial judge totally denies a right to allocution requested by a defendant, or cuts that defendant off prematurely when the defendant is speaking, before making the decision as to whether an actual denial of the right of allocution affects the legality of the sentence.

¶ 9 I question how the failure to afford such a fundamental right has no effect on the legality of the sentence whereas waiting a few weeks after sentencing to receive facts regarding restitution does. *See, e.g., Commonwealth v. Mariani,* 869 A.2d 484 (Pa.Super.2005). As in the cases of restitution and merger, I believe that the term "legality" comprises more than a rote finding that the sentence is still within the statutory maximum term of confinement.

¶ 10 Nonetheless, I believe that we should await a case that squarely presents the issue of the denial of the right to allocution before dealing with the issue of "legality" and "waiver."