J-S19040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| WILLIAM YOUNG, | : | |
| | : | |
| Appellant | : | No. 736 EDA 2015 |

Appeal from the Judgment of Sentence October 28, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0010026-2010;
CP-51-MC-0045553-2012; CP-51-MC-0045554-2012;
CP-51-MC-0045555-2012; CP-51-MC-0045556-2012

BEFORE: BENDER, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED APRIL 19, 2016**

William Young ("Young") appeals from the judgment of sentence imposed following the revocation of his probation. We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural background, which we adopt for purposes of this appeal. ***See*** Trial Court Opinion, 6/8/15, at 1-4.[1]

On appeal, Young raises the following questions for our review:

1. Did not the trial court err and violate [Young's] right to allocution by failing to afford him a chance to speak on his own behalf prior to imposition of sentence?

2. Did not the trial court err and abuse its discretion by imposing an unreasonable and manifestly excessive sentence[,] and by failing to state adequate reasons for imposing such a lengthy sentence on the record?

---

[1] Young also filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal.

Brief for Appellant at 3.

In his first issue, Young contends that, although his counsel initially advised the trial court that Young did not wish to testify on his own behalf, counsel specifically noted that Young might chose to exercise his right to allocution before sentencing. *Id*. at 11. Young asserts that he subsequently informed the trial court that he had changed his mind, and that he wanted to testify. *Id*. Young asserts that the trial court then "conducted a hostile and argumentative cross-examination of [] Young, during which [] Young's answers were interrupted repeatedly by the court." *Id*. Young claims that he "eventually stopped trying to explain what happened between him and the [victim,] and instead attempted to address the court regarding sentencing[, but] was again interrupted." *Id*. at 11-12. Young argues that his counsel "reluctantly waived Young's] right to a [pre-sentence investigation report ("PSI")] so that sentencing could commence immediately." *Id*. at 12. Young contends that the trial court then proceeded to sentence him on all five of his open probation cases without permitting Young, his counsel or the prosecutor to speak. *Id*. at 13. Young contends that his right of allocution, pursuant to Pa.R.Crim.P. 708(D)(1),[2]

---

[2] Rule 708(D)(1) provides that, upon revocation of probation, "[a]t the time of sentencing, the judge shall afford the defendant the opportunity to make a statement in his or her behalf and shall afford counsel for both parties the opportunity to present information and argument relative to sentencing." Pa.R.Crim.P. 708(D)(1).

was denied. *Id*. at 14. Young asserts that a formal objection would have been "vain and useless." *Id*. at 15.

Failure to grant a defendant the right of allocution constitutes legal error. *See Commonwealth v. Jacobs*, 900 A.2d 368, 376-77 (Pa. Super. 2006) (*en banc*). However, like most legal errors, a claim that the defendant was denied his right to allocution is nevertheless waivable if not raised before the trial court. *Id*.

Here, Young did not raise his allocution claim before the trial court.[3] Therefore, it is waived. *See* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Jacobs*, 900 A.2d at 377 (holding that the defendant's allocution claim was waived because it was not raised before the trial court); *see also Commonwealth v. Williams*, 900 A.2d 906, 909 (Pa. Super. 2006).[4]

---

[3] Young did not raise this issue at his sentencing hearing. Additionally, our review of Young's post-sentence Motion reveals that no claim regarding allocution was raised therein.

[4] Even if we had not deemed Young's allocution claim to be waived, we would have concluded that it lacks merit. Our review of the record discloses that Young was given ample opportunity to, and did, testify on his own behalf shortly *after* the trial court found him in violation of his probation and *before* he was sentenced. *See* N.T. (hearing), 10/28/14, at 57-76; *see also id*. at 64, 70, 72, 74 (wherein the trial court repeatedly asked Young if there was anything else that Young wanted to tell the court). Thus, Young exercised his right of allocution.

Young asserts that, if his allocution claim is deemed to have been waived, then this court should conclude that Young's counsel was *per se* ineffective. Brief for Appellant at 16-17. Young concedes that ineffectiveness claims are generally deferred to collateral review under the Post Conviction Relief Act ("PCRA"), but asserts that this Court should address the claim on Young's direct appeal, as counsel's ineffectiveness is apparent on the face of the record. *Id*. at 17.

Litigation of ineffectiveness claims is not generally a proper component of a defendant's direct appeal, and is presumptively deferred for collateral attack under the PCRA. *See Commonwealth v. Holmes*, 79 A.3d 562, 578 (Pa. 2013). Accordingly, we decline to review Young's claim regarding trial counsel's ineffectiveness, without prejudice to Young to raise it on collateral review, should he so choose.

In his second claim, Young contends that the trial court failed to "put any reasons on the record explaining its abrupt and lengthy sentence …." Brief for Appellant at 19. Young asserts that, pursuant to Pa.R.Crim.P. 708(D)(2),[5] the trial court is required to state on the record the reasons for the sentence imposed upon revocation of probation. *Id*. at 20. Young claims that this requirement applies regardless of whether the sentence imposed falls within the Sentencing Guidelines. *Id*. at 21. Young points to

---

[5] Rule 708(D)(2), provides that, upon revocation of probation, "[t]he judge shall state on the record the reasons for the sentence imposed." Pa.R.Crim.P. 708(D)(2).

the trial court's statement in its Pa.R.A.P. 1925(a) Opinion that, when imposing sentence, it considered several factors, including "[Young's] recent arrest, [Young's] direct and technical violations, the willfulness of these violations, the Sentencing Guidelines, the fundamental norms which underlie the sentencing process, [Young's] statements and witness testimony." *Id*. at 22. Young argues that the trial court's statement is problematic because (1) Young did not incur any new criminal convictions; (2) the Sentencing Guidelines were never discussed or placed on the record; and (3) none of the trial court's reasons for the sentence imposed were placed on the record. *Id*. (citing Trial Court Opinion, 6/8/15, at 7). Young contends that the trial court essentially gave him the maximum sentence permitted on each of his convictions, to run consecutively, and that his sentence is unreasonable and manifestly excessive. *Id*. at 22, 23. Young claims that, in imposing sentence, "[t]here was no consideration of relevant sentencing factors, no rationalization, and no indication that the sentence was anything but arbitrary and unduly harsh." *Id*. at 29.[6]

Young challenges the discretionary aspects of his sentence following the revocation of his probation. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right."

---

[6] Young also claims that the sentence imposed was the result of partiality, bias and ill-will, which was exemplified by the trial court's demeanor towards Young throughout the proceedings. Brief for Appellant at 24. However, this claim was not raised before the trial court, either at sentencing or in Young's post-sentence Motion. Therefore, it is waived. *See* Pa.R.A.P. 302(a).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987); 42 Pa.C.S.A. § 9781(b). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted).

In the instant case, Young filed a timely Notice of Appeal, preserved his claims in a timely post-sentence Motion, and included in his appellate brief a separate Rule 2119(f) statement. As such, Young is in technical compliance with the requirements to challenge the discretionary aspects of a sentence. *Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010). Thus, we will proceed to determine whether Young has presented a substantial question for our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Prisk*, 13 A.3d

526, 533 (Pa. Super. 2011). Further, "[a] substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (internal citations omitted).

In his Rule 2119(f) Statement, Young contends (1) that his sentence is unreasonable and manifestly excessive because the trial court essentially imposed the maximum sentences possible and imposed them consecutively; and (2) the trial court failed to state on the record the reasons for the sentence imposed. Brief for Appellant at 10. A claim of excessiveness can raise a substantial question as to the appropriateness of a sentence under the Sentencing Code, even if the sentence is within the statutory limits. *Commonwealth v. Mouzon*, 812 A.2d 617, 624 (Pa. 2002). Additionally, a claim that the sentencing court imposed a sentence outside the standard guidelines without stating adequate reasons on the record presents a substantial question. *See Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa. Super. 2014). Accordingly, we will review the merits of Young's claim.

Our standard of review is well-settled:

The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment--a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was

- 7 -

manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Colon***, 102 A.3d 1033, 1043 (Pa. Super. 2014).

> The reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

> The sentencing court's institutional advantage is, perhaps, more pronounced in fashioning a sentence following the revocation of probation, which is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant reappears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply, and the revocation court is not cabined by Section 9721(b)'s requirement that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721.

***Commonwealth v. Pasture***, 107 A.3d 21, 27 (Pa. 2014) (some citations and quotation marks omitted).

Upon revocation of probation, "the sentencing alternatives available to the revocation court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the

order of probation." 42 Pa.C.S.A. § 9771(b). However, the imposition of total confinement upon revocation requires a finding that either "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned, or (3) such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S.A. § 9771(c).

Moreover, section 9721(b) specifies that in every case following the revocation of probation, "the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b); *see also* Pa.R.Crim.P. 708(C)(2) (providing that, at the time of sentencing following the revocation of probation, "[t]he judge shall state on the record the reasons for the sentence imposed.").

However, following revocation of probation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statutes in question, particularly where the trial judge had the benefit of a PSI during the initial sentencing proceedings. *Pasture*, 107 A.3d at 28 (explaining that, where the defendant has previously appeared before the trial court judge, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing because the judge is already fully informed as to the facts and circumstances of both the crime and the nature of the defendant); *see*

*also id*. (noting that "there is no absolute requirement that a trial court judge, who has already given the defendant one sentencing break after having the benefit of a full record, including a PSI, must order another PSI before fashioning the appropriate revocation sentence."). Nevertheless, the *record as a whole* must reflect the sentencing court's consideration of the facts of the crime and character of the offender. ***See Commonwealth v. Crump***, 995 A.2d 1280, 1283 (Pa. Super. 2010).

In this case, Young initially received a sentence in 2010 of three years of probation for fleeing or attempting to elude an officer. Thereafter, Young pleaded guilty in 2012 to three counts of simple assault, two counts of endangering the welfare of a child, and once count each of recklessly endangering another person, stalking and contempt for violation of order. At his sentencing for these additional crimes, Young received further leniency from the trial court, as the bulk of his sentences were probationary in nature.[7] Despite being given relatively lenient sentences for his prior offenses, Young's criminal behavior escalated to a violent assault upon the victim while he was under the supervision of the trial court. Because Young failed to adhere to the conditions imposed upon him, the trial court, upon revocation of Young's probation, was free to impose a lengthier sentence within the statutory bounds. ***See Pasture***, 107 A.3d at 28 (explaining that

---

[7] Young received an aggregate prison sentence of 13½ to 23 months, followed by 17 years of probation.

a trial court does not necessarily abuse its discretion in imposing a seemingly harsher post-revocation sentence where the defendant received a lenient sentence and then failed to adhere to the conditions imposed on him). Indeed, "where the revocation sentence was adequately considered and sufficiently explained on the record by the revocation judge, in light of the judge's experience with the defendant and awareness of the circumstances of the probation violation, under the appropriate deferential standard of review, the sentence, if within the statutory bounds, is peculiarly within the judge's discretion." *Id*. at 28-29.

Additionally, the record reflects that because the trial court judge had presided over Young's prior guilty pleas and sentencing hearings in 2010, 2012 and 2013, including Young's prior revocation hearing and resentencing, the trial court judge was familiar with Young's background and character. The record also reflects that the trial court judge had ordered a PSI in preparation for sentencing Young in connection with his 2012 cases.[8] Further, at the revocation hearing, the trial court heard extensive and detailed testimony from the victim regarding Young's threats to harm her, and his assault on her just hours after he had been released from prison. *See* N.T., 10/28/14 (hearing), at 5-47; *see also id*. at 41 (wherein the victim testified that Young had been beating her for years). The trial court also heard extensive testimony from Young, which the trial court found to be

_____

[8] At the revocation hearing, Young waived his right to have a PSI prepared for his sentencing. *See* N.T. (hearing), 10/28/14, at 77-78.

incredible. *See id*. at 57-76 (wherein Young denied that he had sent 28 threatening text messages to the victim, kicked in her door, or broke her door frame, and testified that the victim is "crazy," "bipolar" and was "tampering with the system," and that, rather than punching the victim, he accidentally "elbowed her in the face," thereby causing her busted lip, which necessitated 5 stitches); *see also id*. at 76-77 (wherein the trial court indicated that it found Young to be a "liar and con artist," and that his story was "unbelievable, incredible and not worthy of belief.").

As noted by the trial court,

[i]t is clear to this [c]ourt that [Young] is likely to commit another crime if not imprisoned. Athough [Young] was not convicted of any charges stemming from the December 2013 incident, [the victim's] testimony and [Young's] unwillingness to take any responsibility for his actions indicate that he is likely to reoffend. This [c]ourt is particularly troubled that, shortly after being released from prison, and already having been convicted of numerous offenses relating to harassing, stalking, and threatening [the victim], [Young] violated a stay away [O]rder and proceeded to once again terrorize [the victim]. It seems that unless he is incarcerated, [Young] will continue to harass [the victim], a prospect this [c]ourt finds untenable.

The imposition of a prison sentence was also essential to vindicate the authority of this [c]ourt. The October 28[, 2014] hearing was [Young's] second Violation of Probation hearing for CP-51-CR-0010026-2010; his first such hearing was also a result of his harassment of [the victim]. [Young] was previously convicted of violating an [O]rder of protection, and yet he almost immediately violated a stay away [O]rder upon his release from prison in December 2013. All of this makes it clear that [Young] has no respect for the authority of this [c]ourt, and that a sentence of imprisonment is appropriate in this case.

Trial Court Opinion, 6/8/15, at 8-9; *see also* N.T., 10/28/14, at 53-56.

In finding that Young's conduct indicated that he would likely commit another crime if not imprisoned, and that Young's confinement was essential to vindicate the authority of the court, the trial court complied with the requirements of section 9771(c). Additionally, the trial court explained that each of the sentences imposed were within the statutory limits. **See** Trial Court Opinion, 6/8/15, at 7-8.

In light of the foregoing, we conclude that the record as a whole confirms that the trial court was provided with sufficient information to make a fully informed sentencing decision following the revocation of Young's probation. Additionally, we conclude that Young's aggregate prison sentence of 13-26 years is not manifestly excessive for his numerous offenses, and the trial court was free to impose the sentences consecutively. **See Commonwealth v. Swope**, 123 A.3d 333, 341 (Pa. Super. 2015). Young is not entitled to a volume discount for his crimes. **See id**. We discern no abuse of discretion in the trial court's sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2016

FILED

JUN 08 2015

Criminal Appeals Unit
First Judicial District of PA

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :    CP-51-CR-0010026-2010
                                :    MC-51-CR-0045553-2012
                                :    MC-51-CR-0045554-2012
                                :    MC-51-CR-0045555-2012
                                :    MC-51-CR-0045556-2012
                                :
                                :
             v.                 :    736 EDA 2015
                                :
                                :
    William Young               :

June 4, 2015

MEANS, J.

## OPINION

### HISTORY

With respect to CP-51-CR-0010026-2010, on October 1, 2010, William Young, Defendant, pleaded guilty to Fleeing or Attempting to Elude an Officer and was sentenced to three (3) years of probation. On December 31, 2012, Defendant pleaded guilty to the four misdemeanor cases at issue. On MC-51-CR-0045553-2012, Defendant pleaded guilty to Simple Assault and Contempt for Violation of Order, for which he was sentenced to two (2) years of probation and one (1) year of probation, respectively. On MC-51-CR-0045554-2012, Defendant pleaded guilty to Endangering the Welfare of a Child, for which he was sentenced to eleven and one half (11 ½) to twenty three (23) months confinement, followed by three (3) years of probation. On MC-51-CR-0045555-2012, Defendant pleaded guilty to Simple Assault, for which

1

he was sentenced to two (2) years of probation. On MC-51-CR-0045556-2012, Defendant pleaded guilty to Endangering the Welfare of a Child, Stalking, and Simple Assault, for which he was sentenced to five (5) years of probation, five (5) years consecutive probation, and two (2) years consecutive probation, respectively. As a result of these pleas, Defendant was found to be in violation of his probation for CP-51-CR-0010026-2010.

On January 30, 2014, Defendant was arrested and charged with Aggravated Assault, Robbery, Burglary, Criminal Trespass, Retaliation, Intimidation, Stalking, Harassment, Possession of an Instrument of a Crime, Terroristic Threats, Simple Assault, and Recklessly Endangering Another Person. The complaining witness was Amber Myers, who was also the complaining witness in each of the 2012 MC cases. On May 5, 2014, the case was dismissed because Ms. Myers failed to appear for the preliminary hearing. The Commonwealth subsequently filed a Daisey Kates motion requesting a Violation of Probation hearing before this court.

The Violation of Probation hearing was held on October 28, 2014. Ms. Myers, Defendant's ex-girlfriend and mother of his child, testified that on December 23, 2013, she began receiving text messages from Defendant, who had recently been released from prison. N.T. 10/28/2014 at 7-8. Defendant told Ms. Myers that she owed him money and that he would "kick [her] door in," saying "you know I'll cut you," and making various other threats. Id. at 9, 24-29. Upon receiving these messages, Ms. Myers left her home at 6322 Chew Avenue in Philadelphia. When she returned, along with her friend and roommate Naja Sabad, the Defendant kicked in the back door to the home, breaking the door frame. Id. at 11. Defendant then attacked Ms. Myers, punching and kicking her in the face approximately ten (10) times. Id. After Defendant left the home, Ms. Sabad contacted the authorities and an ambulance was sent to take

2

Ms. Myers to the hospital. Id. at 18-19. While at the hospital, Ms. Myers spoke to Detective Veal of the Philadelphia Police Department. Detective Veal took photos of her injuries. Id. at 20. The photos show that Ms. Myers suffered a knot on her forehead, a cut to her lip and bruises to her face. Id. at 20-23. Ms. Myers continued receiving threatening text messages from the Defendant after he attacked her, including one message saying "Make a statement. I dare you. Answer or I'm back up there. I'm only a b**** a** too. **** the cops... I'll be back, I'll be back." Id. at 29-32. At the conclusion of Ms. Myer's testimony, Defendant consulted with counsel about his right to testify, and declined to do so. This Court found Defendant to be in violation of his probation, ordered a pre-sentence investigation and mental health evaluation, revoked the Defendant's current probation, issued a detained, and set a sentencing date of January 28, 2015. Id. at 50-52. This Court also issued a stay-away order for both Defendant and Ms. Myers. Id. at 53.

This Court then ordered the sheriffs to take Defendant back, at which point Defendant spoke to counsel and indicated that he did in fact wish to testify on his behalf, against the advice of counsel. Id. at 56. Defendant testified that Ms. Myers was "tampering with the system," that she previously told him she would not testify in court, and that in fact she indicated that the Commonwealth was "harassing her" and she did not want to go to court. Id. at 59, 65. Defendant stated that he did not kick in the door to Ms. Myers's residence, but that she invited him there, and that they had an argument. Id. at 62-63. During that argument, Ms. Myers jumped on Defendant's back, and he tried to exit through the back door, which was "fragile," and accidentally elbowed Ms. Myers in the face, at which point she fell to the ground. Id. at 61, 63. Defendant testified that he never texted Ms. Myers, and that he only spoke to her on her landline. Id. at 68.

3

At the conclusion of Defendant's testimony, this Court found Defendant incredible. Id. at 77. Defendant then stated that he did not want to wait to be sentenced, and defense counsel waived the presentence investigation. Id. at 77-78. This Court then sentenced Defendant. On CP-51-CR-0010026-2010, Defendant was sentenced to three and one half (3 ½) to seven (7) years confinement for Fleeing or Attempting to Elude an Officer. On MC-51-CR-0045553-2012, Defendant was sentenced to one (1) to two (2) years confinement for Simple Assault. On MC-51-CR-0045554-2012, Defendant was sentenced to one and one half (1 ½) to three (3) years confinement for Endangering the Welfare of a Child. On MC-51-CR-0045555-2012, Defendant was sentenced to one (1) to two (2) years confinement for Simple Assault. On MC-51-CR-0045556-2012, Defendant was sentenced to two and one half (2 ½) to five (5) years confinement for Endangering the Welfare of a Child, two and one half (2 ½) to five years (5) confinement for Stalking, and one (1) to two (2) years confinement for Simple Assault. All sentences were ordered to be served consecutively, for a total period of thirteen (13) to twenty six (26) years confinement.

Defendant filed Post Sentence Motions, which were denied on November 17, 2014. Defendant subsequently filed a timely Notice of Appeal to the Superior Court of Pennsylvania, alleging that this Court erred in: 1) admitting the context of the test messages received by Ms. Myers; 2) imposing an unreasonable and manifestly excessive sentence; and, 3) failing to allow Defendant his right to allocution.

4

## LEGAL ISSUES

### A. Jurisdiction

It is clear that this Court had jurisdiction to impose a sentence upon the defendant. The technical and direct violations of probation were misdemeanor matters, which occurred in the City of Philadelphia. This placed jurisdiction squarely with this Court.

### B. Admission of Text Messages into Evidence

Defendant alleges that this Court erred in admitting "numerous text messages that were without authentication and were prejudicial," into evidence. Statement of Matters Complained of on Appeal, 3/31/2015 at 4(a). Because there was sufficient circumstantial evidence to find that the Defendant was the author of the text messages, and because their probative value outweighed their prejudicial nature, the text messages were properly admitted. Authenticating text messages "requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." Com. v. Koch, 39 A.3d 996, 1005 (Pa. Super. Ct. 2011). In the instant case, unlike in Koch, there are numerous contextual clues in the messages that reveal Defendant to be the sender. Id. Ms. Myers received the messages on the same day Defendant was released from prison. The sender of the messages threatened to come and attack Ms. Myers, and, subsequently, Defendant did indeed come to her home. Following the attack, Ms. Myers received messages from the same number threatening her if she contacted the police. All of this provides sufficient circumstantial evidence that Defendant was the author of the text messages.

Defendant also argues that the text messages were unduly prejudicial. The admissibility of evidence is "within the sound discretion of the trial court and will be reversed only upon a

5

showing that the trial court clearly abused its discretion." Commonwealth v. Fransen, 42 A.3d 1100, 1106 (Pa.Super.2012). All relevant evidence is generally admissible, however, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. To be unfairly prejudicial, the prejudicial nature of the evidence must outweigh its probative value. For the purposes of the Rules of Evidence "prejudice" means that the evidence in question has "an undue tendency to suggest a decision on an improper basis." Mahan v. Am-Gard, Inc., 841 A.2d 1052, 1057 (Pa. Super. Ct. 2003). In the instant case, the evidence was relevant in that it tended to make Ms. Myers' statements that Defendant forcibly entered her home and later demanded that she not contact the police more probable. To the extent that the text messages may have had some prejudicial value, presumably due to the graphic language used and threats made, this Court notes that Ms. Myers' testimony on its own contained the same inflammatory content. More importantly, the text messages were not presented to a jury but instead reviewed by a judge who has decades of experience in criminal trials, and whose passions and emotions are not as easily triggered by the foul language, threats, and harassment common in such cases. As such, the messages were not unduly prejudicial, and were properly admitted into evidence.

## C. Excessive or Illegal Sentence

The sentence imposed at the defendant's violation of probation hearing was not excessive or illegal. The imposition of sentence following the revocation of probation "is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal." Commonwealth v. Smith, 669 A.2d 1008, 1011 (Pa. Super.1996). A sentencing court has not abused its discretion "unless the record discloses that the judgment exercised was

6

manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." Commonwealth v. Smith, 673 A.2d 893, 895 (Pa. 1996).

This Court's sentence was not manifestly unreasonable. The record clearly shows that the Court took several factors into consideration when formulating Defendant's new sentence. These considerations include: Defendant's recent arrest, Defendant's direct and technical violations, the willfulness of these violations, the Sentencing Guidelines, the fundamental norms which underlie the sentencing process, Defendant's statements, and witness testimony. Id.

In addition, this Court's sentence was legal. The sole inquiry here is whether the sentence exceeded the maximum statutory penalty. Upon revocation of probation, a sentencing court possesses the same sentencing alternatives that it had at the time of initial sentencing. 42 Pa. C.S.A. § 9771(b); E.g. Commonwealth v. Pierce, 441 A.2d 1218 (Pa. 1982). With respect to CP-51-CR-0010026-2010, Defendant pleaded guilty to Fleeing or Attempting to Elude an Officer, a felony of the 3rd degree, which is punishable by not more than seven (7) years imprisonment. 18 Pa.C.S.A. § 1103. As such, Defendant's sentence of three and one-half (3 ½) to seven (7) years does not exceed the statutory maximum. For MC-51-CR-0045553-2012, Defendant pleaded guilty to Simple Assault as a misdemeanor of the 2nd degree, which is punishable by up to two (2) years imprisonment. 18 Pa.C.S.A. § 1104. Therefore, the sentence of one (1) to two (2) years confinement does not exceed the statutory maximum. For MC-51-CR-0045554-2012, Defendant pleaded guilty to Endangering the Welfare of a Child as a misdemeanor of the 1st degree, which is punishable by up to five (5) years imprisonment. Id. Therefore, the sentence of one and one-half (1 ½) to three (3) years imprisonment does not exceed the statutory maximum. For MC-51-CR-0045555-2012, Defendant pleaded guilty to Simple Assault as a misdemeanor of the 2nd degree, which is punishable by up to two (2) years

7

imprisonment. Id. Therefore, the sentence of one (1) to two (2) years confinement does not exceed the statutory maximum. For MC-51-CR-004556-2012, Defendant pleaded guilty to Endangering the Welfare of a Child as a misdemeanor of the 1st degree, which is punishable by up to five (5) years imprisonment. Id. Therefore, the sentence of two and one-half (2 ½) to five (5) years confinement does not exceed the statutory maximum. Defendant also pleaded guilty to Stalking as a misdemeanor of the 1st degree, which is punishable by up to five (5) years imprisonment. Id. Therefore, the sentence of two and one-half (2 ½) to five (5) years of confinement does not exceed the statutory maximum. Finally, Defendant pleaded guilty to Simple Assault as a misdemeanor of the 2nd degree, which is punishable by up to two (2) years imprisonment. Id. Therefore, the sentence of one (1) to two (2) years confinement does not exceed the statutory maximum.

The sentence that the defendant received was also not excessive. Upon revocation of probation, the trial court may impose total confinement if one of three conditions is met:

(1)    defendant has been convicted of another crime;

(2)    the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3)    such a sentence is essential to vindicate the authority of the court.

42 Pa. C.S.A. § 9771(c).

In this case Defendant met these conditions, and a prison sentence upon revocation of probation was proper. It is clear to this Court that Defendant is likely to commit another crime if not imprisoned. Although Defendant was not convicted of any charges stemming from the

8

December 2013 incident, Ms. Myers' testimony and Defendant's unwillingness to take any responsibility for his actions indicate that he is likely to reoffend. This Court is particularly troubled that, shortly after being released from prison, and already having been convicted of numerous offenses relating to harassing, stalking, and threatening Ms. Myers, Defendant violated a stay away order and proceeded to once again terrorize the complainant. It seems that unless he is incarcerated, Defendant will continue to harass Ms. Myers, a prospect this Court finds untenable.

The imposition of a prison sentence was also essential to vindicate the authority of this Court. The October 28th hearing was Defendant's second Violation of Probation hearing for CP-51-CR-0010026-2010; his first such hearing was also as a result of his harassment of Ms. Myers. Defendant was previously convicted of violating an order of protection, and yet he almost immediately violated a stay away order upon his release from prison in December 2013. All of this makes it clear that Defendant has no respect for the authority of this Court, and that a sentence of imprisonment is appropriate in this case.

### D. Right of Allocution

Finally, Defendant alleges that this Court erred in denying him the right of allocution. The right of allocution is of paramount importance, and the sentencing court has a mandatory duty to inform the defendant of his right to speak. This right, however, is waivable, and such waiver occurs when the defendant fails to raise the issue with the trial court. Com. v. Jacobs, 900 A.2d 368, 376-77 (Pa. Super. Ct. 2006). Defendant did not raise the issue of his right of allocution at sentencing or in the Post Sentence Motion he filed with this Court. As such, the issue is waived for appeal.

9

Based upon the foregoing reasons, this Court's sentence must be upheld.

BY THE COURT:

_Rayford A. Means_

MEANS, J.